## Prescott, Executor of Mary E. Prescott v. Grimes, et al.

(Decided April 18, 1911.)

### Appeal from Bourbon Circuit Court.

1. Life Tenants.—Suffering Waste.—A life tenant may not suffer the estate to decay or go to waste for want of necessary repairs, any more than he may injure its value by acts of voluntary waste.

2. Same.—Extent of Waste.—Cost of Repairs.—The duty of the life

tenant is to leave the property in reasonable repair at the end of
his term, and this duty keeps pace with the life of the tenancy,
and when the court comes to enforce this duty the inquiry is
not when the waste occurred or how long it has been permitted
to run, but what is the extent thereof, and what sum will be
required to make the necessary repairs.

EMMET M. DICKSON and DENIS DUNDON for Appellant.

ROBERT C. TALBOTT and W. H. WHITLEY for Appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In the settlement of her husband's estate in 1865,
Mary Grimes was allotted, as dower, the dwelling and
about two hundred acres of land around it. The dwell-
ing, outbuildings and fencing upon the place were all in
good repair. It was a handsome home, well kept. She
lived there for several years, when she married one J.
W. Prescott, who moved to her place, and together they
occupied it until her death in 1098. Following her mar-
riage but slight attention was paid to the care of the
dwelling, outbuildings and fencing, so that at the time of
her death all were in a very much decayed and dilapi-
dated condition. Her husband, John Grimes, had two
children by a former wife, and after her death the heirs-
at-law of these two children brought suit against her
husband as executor of his wife's estate, in which they
sought to recover of him damages for her failure to keep
and maintain the dwelling and other improvements upon
the place in repair. The claim was resisted by the execu-
tor, primarily upon the ground that a life tenant is not
liable for permissive waste. The procedure by bill in
equity was objected to as improper; the aid of the five
and ten years statutes of limitation was invoked, and the
plea of laches interposed. The case was prepared for
trial, much proof taken, and upon final submission a
judgment for $3,000 was entered in favor of the plain-
tiffs. From that judgment this appeal is prosecuted.

The evidence shows beyond dispute that in 1865, when
the property in question was set apart to the widow of
John S. Grimes as her dower interest in the estate, it was
in good repair, and at her death in 1908 it was in a very
dilapidated condition. If the life tenant is liable at all
for the permissive waste charged, the amount allowed by
the court in his judgment is reasonable. As a general

rule a tenant for life must make all ordinary, reasonable and necessary repairs required to preserve the property and prevent its going to decay or waste, and if he fails to do so, the remainderman may, by appropriate proceeding, either require him to make such repairs or have them made and the interest of the life tenant in the property subjected in satisfaction of the costs thereof. The law casts upon the life tenant this burden because he receives all of the rents, income and profits growing out of the use of the property during the life of his tenancy. He may not suffer it to go to decay or waste for want of necessary repairs any more than he may injure its value by acts of voluntary waste. In Crutz v. Heil, 89 Ky., 432, it was held that the life tenant must pay the taxes and keep the property improved. No distinction was made or drawn between the duties of paying the annual taxes assessed against the property and keeping up the repairs. For a failure to discharge either of these duties the tenant would be guilty of permissive waste. Again, in Dukle v. City of Owensboro, 98 S. W.. 1031, it is held to be the duty of the life tenant to pay the cost of reconstructing a pavement in front of his property, on the theory that this is a repair. To the same effect is Hackworth v. Louisville A..S. Co., 20 Rep., 1789. The views of text writers and most courts of last resort are in accord with the principles announced in the decisions which we have cited.

The burden of keeping the property in reasonable repair being cast upon the life tenant, the question arises whether the remainderman may enforce this right against the estate of the life tenant after the death of the latter. There can be no question but what the remainderman, at any time during the existence of the life estate, might have, by appropriate action, compelled the life tenant to discharge all duties as to repairs, etc., which the law imposed upon him. As this right existed during the continuance of the life estate it might have been enforced just prior to the death of the life tenant, and we see no good reason why his estate should not be answerable after his death for the cost of repairs that he should have made during his life. With the exception of certain excepted cases, under our statutes all actions for money or breach of contract or duty survive and may be prosecuted against the personal representative of the deceased. The action for waste is not one excepted out

of the general provisions of the statute, and hence survives.

It is urged that, even though the action survives, it can not be brought in equity but must be brought at law. It is so held in certain jurisdictions, and such contention is supported by some of the text writers; but such is not the practice in this State, for in Smith v. Mattingly, 16 Rep., 418, after reviewing fully the law of procedure down to that time, it is stated that:

"The remedy by equitable proceeding is more easy, expeditious and complete than by an action ordinarily, intended to restrict the right to sue at law to the action for voluntary waste provided for in section 1, quoted, whereby, in case the jury finds the waste was wantonly committed, treble damages may be assessed, leaving exclusive jurisdiction of cases of permissive waste to courts of equity."

This opinion is conclusive of the question and settles it adversely to the claim of appellant.

It is next urged that there was a misjoinder of parties, and that the motion to elect which should prosecute should have been sustained. As stated, John S. Grimes left surviving him two children, William, a son, and Sallie, a daughter, who married one Logan. William died intestate and left surviving him two children, the plaintiffs to this suit. Sallie Logan died testate, and by her will devised to the children of her brother, William, her undivided interest in the land in question. They then became, by inheritance from their father and devise from their aunt, the owners in fee of the entire tract. They are joint tenants, claim from and through the same source, and their interests are identical. In Smith v. Mattingly, supra, the right of all the remaindermen to be joined as plaintiffs was distinctly recognized. To the same effect are Newman v. Kendall, 2 Marshall, 234, and King v. Bullock, 9 Dana, 41. These decisions upon this question of practice are supported by section 22 of the Code, which provides that:

"All persons having an interest in the subject of an action and in obtaining the relief demanded may be joined as plaintiffs, unless it is otherwise provided in this Code."

The interests of the plaintiffs in the subject of this action are identical. They each seek to recover such dam-

ages as will compensate the estate for the damage done by the failure of the life tenant to keep the property in reasonable repair. The court did not err in refusing to require them to elect.

The only remaining questions are, did the court err in refusing to uphold the pleas of the statute of limitation and laches? It being the duty of the life tenant to keep the place in reasonable repair, it is urged that, when the remaindermen discovered that this was not being done, they should have demanded of the life tenant that the necessary repairs be made, and upon her refusal to comply with their request they should have taken steps to compel her to do so; that, inasmuch as they made no such request and took no steps to compel her to make repairs, they, by their silence and inaction, acquiesced in the conduct of the life tenant and are by reason of their acts estopped from now seeking to recover damages of her estate on that account. Or, if this is not so, they should at least be restricted in their recovery to such damages as the estate suffered by reason of the permissive waste during the five years—or, at most, ten years—next before the institution of their suit. There would be much force in this argument if there was any definite time fixed within which the repairs must be made. But the law imposes upon the life tenant only the duty to so manage the estate that at the expiration of the tenancy or term he may deliver up the property in a reasonable condition of repair. He might suffer the property to become out of repair for years and later fix it up, in which event the remainderman would have no cause for complaint; and even though years had run before any effort was made to compel the life tenant to repair, when such effort was made the court would undoubtedly require the tenant to place the property in reasonable repair, taking into consideration its condition when the life tenancy began. Such a rule is but equitable and just, for the life tenant, having had the use and benefit of the property during his entire term, if instead of spending a small sum of money annually to keep it in repair he has preferred to let it run for several years before he voluntarily makes the repair or is called upon to do so, he is in no condition to complain that the expense or cost thereof is considerable.

As it is the duty of the life tenant to so manage the property as to leave it in a reasonable condition of repair at the expiration of his tenancy, the plea of the statute of limitations can not avail. The duty of the tenant is to leave the property in reasonable condition and repair at the end of the term, and this duty keeps pace with the life of the tenancy. It is an ever-present, existing duty, and when the court comes to enforce this duty, the inquiry is not when the waste occurred, or how long it has been permitted to run, but what is the extent thereof, and what sum will be required to make the necessary repairs. During the life of the tenancy there is no limitation to the time within which the action to compel reparation for permissive waste must be commenced.

On consideration of the whole case we are constrained to hold that the conclusion reached by the chancellor was both equitable and just, for the life tenant was entrusted with the use of a valuable estate, upon which the improvements were in splendid repair when she took possession thereof. It was incumbent upon her to give it such care and attention as a reasonably prudent man would give his own property so as to keep it in repair. This she failed to do, and the judgment against her estate is but a fair estimate of the damage occasioned by this neglect on her part.

Judgment affirmed on original and cross appeal.