## Fisher's Executor v. Haney, et al.

(Decided April 23, 1918.)

### Appeal from Greenup Circuit Court.

1. Waste—Voluntary and Permissive—Action for May be Joined.— Remaindermen may, in the same action, recover from the life tenant or his personal representative damages for voluntary and permissive waste.

2. Waste—Voluntary and Permissive—Definition of.—Voluntary waste consists in the willful destruction or carrying away of something that is attached to the freehold, as, for example, trees or stone. While permissive waste is the failure to take reasonable care of the premises, by neglecting, for example, to keep the buildings and fencing in repair.

3. Waste—Accrual of Action—Limitation of Action to Recover Damages for Voluntary Waste Five Years.—If a tenant for life commits voluntary waste, the remaindermen may, at once, under section 2328 of the Kentucky Statutes bring an action for damages, and limitation begins to run from the time when the voluntary waste complained of was committed; and under section 2515 of the Kentucky Statutes, the action must be brought within five years from the date the cause of action accrued.

4. Waste—Permissive Waste—Accrual of Cause of Action for.—A cause of action to recover damages for permissive waste does not begin to run until the estate of the life tenant has terminated and the action may be brought within five years after that date to recover damages for permissive waste committed at any time during the life tenancy.

5. Waste—Contingent Remaindermen—Action by for Waste—When Allowable.—During the pendency of a life estate contingent remaindermen cannot maintain an action for waste because it cannot then be told whether they would suffer any injury on account of the waste, but they may, during the life tenancy, bring a suit to prevent contemplated waste by the life tenant. But when the life tenancy has ended, and persons who before that were contigent remaindermen, fell into the fee in the estate, they may then bring a suit to recover for the waste committed during the life tenancy.

6. Waste—Measure of Damages for Permissive Waste—Duty of Life Tenant in Caring for Property.—A tenant for life is under no duty

to make costly or extensive repairs, nor is he accountable for depreciation in value that may result from reasonable and proper use of the premises. He is only required to exercise such care as a person of ordinary prudence would exercise under the surrounding circumstances to so manage the property as to prevent it from getting out of repair and deteriorating in value by the failure to keep it in reasonable repair.

ALLEN D. COLE and W. T. COLE for appellant.

R. D. DAVIS, S. S. WILLIS, E. E. FULLERTON and A. V. POLLOCK for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming on original and cross appeal.

On March 3, 1887, W. C. Ireland and others conveyed to Joseph Fisher a tract of land containing about four hundred and fifty acres in consideration of $9,000.00 cash in hand paid. The deed recited that the conveyance was to Fisher for life, "and then to his heirs and assigns forever." Fisher took possession of the land when the conveyance was made and remained in the possession and control of it until his death in May, 1912.

In September, 1912, this action in equity was brought by some of the heirs of Joseph Fisher who became entitled to the property at his death against his executor to recover damages in the sum of $14,375.00 for waste—voluntary and permissive—alleged to have been committed by Joseph Fisher during his occupancy and control of this land; and they had the right to seek a recovery for both kinds of waste in one action.

The suit, as we have said, was brought by several of the heirs of Joseph Fisher, namely, his nieces and nephews; others of the heirs not joining in the suit. On the hearing of the case, the lower court found that the total damage done to the land by the life tenant, Joseph Fisher, amounted to $4,500.00 and distributed their share of this sum among the heirs who joined in the suit in proportion to their respective interests as remaindermen in the land. From this judgment the executor of Joseph Fisher prosecutes this appeal and the heirs who succeeded in the court below also prosecute a cross-appeal complaining that the damages awarded were inadequate.

There can be no question that Joseph Fisher only took a life estate in the land because the deed expressly so provided, and this being so it is equally plain that he

was under a duty not to commit either what is called voluntary or permissive waste. The distinction between these two classes of waste is well recognized in all the authorities. Voluntary waste consists of the wilful destruction or carrying away of something that is attached to the freehold, as, for example, trees or stone, or coal or other mineral substances; while permissive waste is the failure to take reasonable care of the premises by neglecting, for example, to keep the buildings and fencing in such a state of repair as would be considered reasonably sufficient under the circumstances. Smith v. Mattingly, 96 Ky. 228.

The action, as we have seen, was brought by the remaindermen to recover damages for both classes of waste and there was evidence tending to show that Fisher committed both kinds—voluntary, by selling and removing from the premises trees and stone; permissive, by permitting the outbuildings and fences to get badly out of repair and by so cultivating the farm land as to cause deterioration in value, and by neglecting to take reasonable care of the orchard on the premises.

The executor interposed several defenses, among them the statute of limitation, and it is now insisted that the statute presented a bar to the recovery of damages for both the voluntary and permissive waste. We agree with counsel that the statute presented a bar to the recovery of damages for the voluntary waste complained of, but do not think it a bar to the recovery of the damages resulting from the permissive waste.

It is provided in sec. 2328 of the Kentucky Statutes that: "If any tenant for life or years shall commit waste during his estate or term, of anything belonging to the tenement so held, without special license, in writing, so to do, he shall be subject to an action of waste, shall lose the thing wasted, and pay treble the amount at which the waste shall be assessed." It is further provided in sec. 2329 that the action provided for in section 2328 may be brought by a remainderman. The right to maintain the statutory action which, as said in Smith v. Mattingly, *supra,* applies only to voluntary waste accrues when the waste is committed. In other words, if the tenant for life commits voluntary waste, as for example, by destroying timber on the land or in other substantial respects commits wilful acts to the injury of the substance, the remainderman may, at once, under the statute, bring his

action for damages and limitation begins to run against his cause of action from the time when the voluntary waste complained of was committed. We are further of the opinion that section 2515 of the Kentucky Statutes prescribing the causes of actions that must be brought within five years from the date the cause of action accrued are applicable to actions to recover damages for voluntary waste, and this being so there could in this case be no recovery by the heirs on account of the voluntary waste complained of, as this character of waste was committed more than five years before the commencement of the action.

The statute of limitation, however, did not present a bar to so much of the action as sought to recover damages for the permissive waste complained of, as so much of the cause of action as sought to recover damages growing out of permissive waste did not finally accrue until the death of the life tenant, Fisher.

A case presenting this precise question is Prescott's Executor v. Grimes, 143 Ky. 191. In that case suit was brought by the remaindermen against the executor of the life tenant to recover damages growing out of permissive waste committed by the life tenant during her long occupancy of the premises in question. The executor in that case, as in this, relied on the statute of limitation, but in holding that the statute did not present a bar, the court said: "There would be much force in this argument if there was any definite time fixed within which the repairs must be made. But the law imposes upon the life tenant only the duty to so manage the estate that at the expiration of the tenancy or term he may deliver up the property in a reasonable condition of repair. He might suffer the property to become out of repair for years and later fix it up, in which event the remainderman would have no cause for complaint; and even though years had run before any effort was made to compel the life tenant to repair, when such effort was made the court would undoubtedly require the tenant to place the property in reasonable repair, taking into consideration its condition when the life tenancy began. Such a rule is but equitable and just, for the life tenant, having had the use and benefit of the property during his entire term, if instead of spending a small sum of money annually to keep it in repair he has preferred to let it run for several years before he voluntarily makes

the repair or is called upon to do so, he is in no condition to complain that the expense or cost thereof is considerable. As it is the duty of the life tenant to so manage the property as to leave it in a reasonable condition of repair at the expiration of his tenancy, the plea of the statute of limitations can not avail. The duty of the tenant is to leave the property in reasonable condition and repair at the end of the term, and this duty keeps pace with the life of the tenancy. It is an ever present, existing duty, and when the court comes to enforce this duty, the inquiry is not when the waste occurred, or how long it has been permitted to run, but what is the extent thereof, and what sum will be required to make the necessary repairs. During the life of the tenancy there is no limitation to the time within which the action to compel reparation for permissive waste must be commenced.''

Another argument in behalf of the executor is that as the collateral kindred of Joseph Fisher who came into the possession of this property as his nearest relatives at the time of his death, were only contingent remaindermen, they had no enforcible cause of action. It will be observed that as the land was conveyed to Joseph Fisher for life, and then to ''his heirs'' it could not be certainly determined until his death who his heirs would be, or what persons would come into the possession of the estate as his heirs, and this being so it may very well be said that the nieces and nephews who fell into the possession of the land as his next of kin occupied during the life of Joseph Fisher the attitude of contingent remaindermen.

It is also well settled that a contingent remainderman, during the pendency of the life estate, cannot maintain an action for waste for the good reason that it cannot then be told whether or not he would suffer any injury on account of the waste, although it is further held by the weight of authority that a contingent remainderman, while not allowed to recover damages for past waste, may bring suit to prevent contemplated waste by the life tenant. 16 Cyc. 657, 30 A. & E. Ency. of Law 290; Cannon v. Barry, 59 Miss. 289; Watson v. Wolff-Goldman Realty Co., 95 Ark. 18, 22 A. & E. Ann. Cases 540; Brashear v. Macey, 3 J. J. M. 89.

But this rule can have no application to this case because when this suit was brought the contingent status

that the parties bringing the suit occupied during the life of Joseph Fisher came to an end at his death as they then came into the possession of the fee as the heirs of Fisher. After his death, and when this suit was brought, they occupied the relation of the owners of the fee, and this being so they had exactly the same right to bring this suit that they would have had if the deed conveying the land to Joseph Fisher had designated them as the persons who were to take the remainder at his death.

The remaining question relates to the amount of damages awarded by the lower court. In cases like this, where it is sought to ascertain the damage that a large body of land, including buildings and improvements thereon, has sustained through neglect extending over a long period of years, it is extremely difficult, if not impossible, to arrive at a conclusion that could be considered accurate. The best that can be done is to take the varying estimates of witnesses viewed in the light of their opportunity to form opinions that may be regarded as, at least, approximately reliable, and from these conflicting expressions come to the most reasonable and just conclusion attainable under the circumstances.

As we have said, the damages to which the heirs are entitled must be confined to the neglectful manner in which the life tenant cared for this property, and the evidence leaves little doubt that he took no pains to keep it in repair, or to save it from going to ruin. He seems to have worked it by tenants altogether, and to have been disposed to get out of it all that was possible without spending anything in keeping it in repair. That he was guilty of waste there can be no question. This fine body of land, shortly after his death, sold at public sale for about half what it would have sold for if it had been farmed with reasonable care during the occupancy of the life tenant. A tenant for life is not held to a high degree of accountability and is under no duty to make costly or extensive repairs, nor is he to be held accountable for depreciation in value that may result from the reasonable and proper use of the premises. He is only required to exercise reasonable care, or such care as a person of ordinary prudence would exercise under the surrounding circumstances, to so manage the property as to prevent it from getting out of repair and deterior-

ating in value by the failure to keep it in reasonable repair. Every good farmer knows that average land can be extensively and continually cultivated without injury to it, if good judgment is used in the selection and rotation of crops; the keeping down of weeds, briers and underbrush; and putting different portions of the land from time to time in grass; and every good farmer also knows that by the failure to observe customary methods of good husbandry in the planting and rotation of crops, the sowing of the land in grass and the care of the fencing, good land can, in the course of much less than twenty-five years, be reduced in value fifty per cent. or more. And so as to buildings; these improvements need constant attention, and if they do not get any attention it is a matter of common knowledge that in the course of a few years good buildings and good fencing will get so badly out of repair as to be practically of no value, or at least of such little value that to put them in repair would require substantially the expenditure of the same amount of money that it would to replace them with new improvements.

Looking at the manner in which the life tenant neglected this property and the improvements thereon as exhibited in the evidence of the witnesses who had opportunity to know its condition when he took it and at his death, we are inclined to think that the finding of the lower court was substantially correct, and the judgment is affirmed on the original and cross appeal.