## Salyer's Guardian, et al. v. Keeton.

(Decided May 21, 1926.)

### Appeal from Magoffin Circuit Court.

1. Estoppel—At Son's Death, his Remander Interests in Land Received at Death of Mother Subject to Father's Curtesy Held to Pass to Parties who Succeeded to Title of Grantee of Father Under Warranty Deed.—At son's death, his remainder interest in land received at death of mother subject to father's curtesy held to pass to parties who succeeded to the title of grantee of father, who had conveyed such land by warranty deed believing he had good title.

2. Limitation of Actions—Statutes of Limitation Held Not to Run Against Remanderman's Right to Prevent Waste by Life Tenants who were Also Cotenants Until Such Waste was Committed or Threatened (Ky. Stats., Sections 2505, 2508, 2515, 2522).—Ky. Stats., sections 2505, 2508, 2515, and 2522, which are all statutes of limitation, held not to run against remainderman's right to prevent waste by life tenants who were also cotenants with remainderman until such waste was committed or so threatened as to give him reasonable grounds to believe it would presently be committed.

3. Life Estates—Cotenants of Remainderman Owning Estates of Life Tenant Cannot Hold Adversely to Remainderman Until Death of Life Tenant.—Cotenants of remainderman owning estates of life tenant cannot hold adversely to remainderman, until death of life tenant, which is earliest time at which remainderman is entitled to possession.

4. Estoppel—Ramainderman Held Not Estopped to Prevent Waste by Life Tenants by Her Silence while They were Preparing to Commit it, where They had Constructive Notice of Her Claim.— Remainderman held not estopped to prevent waste by life tenant by her silence while they were preparing to commit it, since they had by records of title constructive notice of her claim.

5. Appeal and Error—Judgment against life tenants of one-fourth remainder interest in certain land, who took oil from land, for value of one-fourth of such oil, held not prejudicial to them, though Ky. Stats., section 2328, would also permit it to include payment of treble the value of waste committed.

6. Statutes—Ky. Stats., section 2328, relating to waste, being modeled after 6 Edw. 1, c. 5, should be construed as the English statute is construed.

7. Life Estates.—Life tenant has duty to so exercise his rights as not to injure remaindermen.

HARRY H. RAMEY for appellants.

J. B. ADAMSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

The appellee, whom we will call the plaintiff, began this action against the appellants, whom we will refer to as defendants, to enjoin the commission of waste on a certain tract of land in which plaintiff claims to own a remainder interest. She was awarded the relief sought, and the defendants have appealed. Practically the only question involved upon this appeal is whether limitation will begin to run against a remainderman prior to the death of the life tenant, who is also a cotenant with the remainderman. This litigation grew out of these facts: On March 26, 1884, Dennis Patrick and his wife, Mary, acquired by deed, 194¼ acres of land. In 1886 Mary Patrick died intestate and left surviving her two children, Claude Patrick and Elizabeth Patrick, now Elizabeth Keeton, and to these two children, Claude and Elizabeth, the interest of Mary Patrick in this land passed under the statutes of descent and distribution, subject, however, to the curtesy of her husband, Dennis Patrick.

Believing himself to own the whole of this land, on September 28, 1887, Dennis Patrick undertook by deed of general warranty to convey the whole of this 194¼ acres to Solena Canoy, from whom through many mesne conveyances, a portion of this property has passed to defendants. In 1903, Claude Patrick became 21 years of age, and in 1909, he died intestate and without issue. His father became his heir, and the one-half remainder interest of Claude in his mother's half of this property would have passed to Dennis Patrick, but he, having previously undertaken by general warranty deed to convey this to Solena Canoy, did not take this land, but on the contrary it passed immediately to the parties who had succeeded to the title of Solena Canoy. In the case of Perkins v. Coleman, 90 Ky. 611, 14 S. W. 640, 12 R. 501, we said:

> "Where it clearly appears from the writing that the vendor has conveyed, or agrees to convey, a good and sufficient title, and not merely his present interest in the land, the agreement runs with the land, and repeats itself every day; and if the vendor, at the time of the conveyance, has not title to the land but subsequently acquires the title, it 'eo instante,' inures to the benefit of the vendee and his privies."

In 1905, Elizabeth Patrick became 21 years of age. In 1907 she married L. B. Keeton, and in this suit, which was begun by her on October 6, 1923, she alleges that she is the owner of one-fourth of this 194¼ acres of land, subject to the curtesy of her father, Dennis Patrick, who is still alive. She alleges that the defendants are committing and threatening to commit waste thereon by boring wells and taking from it the oil and gas thereunder. She seeks to have the court enjoin the commission of this waste, and to recover of the defendants treble the value of the oil and gas removed by them. The court in its judgment found that the defendants had obtained $1,000.00 in cash as a bonus for this lease, and that under this lease, they had obtained $3,188.41 as royalty for oil that had been pumped therefrom. The court gave to the plaintiff a judgment against defendants for one-fourth of this bonus, or $250.00, and for one-fourth of these royalties, or $797.10, thus giving to her the value of the waste committed by defendants, and not treble its value, as prayed for by plaintiff; but as no cross-appeal has

been prosecuted, plaintiff's right to recover treble the value of the waste committed is not before us.

Defendants in the court below contended and are here contending that the plaintiff's cause of action is barred by section 2515 of our statutes (the five-year statute); by section 2522 (the ten-year statute); by section 2505 (the fifteen-year statute), and by section 2508 (the thirty-year statute); but the defendants seem to have overlooked a part of each of these statutes, for an examination will disclose that in each of these statutes there is either this or a similar clause: "After the cause of action accrued," and because such a clause is in each of these statutes, the defense of limitation was not available to the defendants, for the plaintiff's cause of action did not accrue until this waste was either committed or its commission was so threatened as to give the plaintiff reasonable grounds to believe it would presently be committed.

We have seen above that the defendants have acquired by deed from Dennis Patrick his half of this land and his curtesy in the one-half formerly belonging to his wife, and have acquired by operation of law the remainder interest of Claude Patrick in this land; thus the defendants own one-half of this land absolutely, the life estate of Dennis Patrick in the other half and the remainder interest of Claude Patrick in one-fourth of it, and their argument is that they are cotenants of the plaintiff, and that limitation will run in favor of one cotenant against another cotenant, and they insist that they and those under whom they claim have been holding this land adversely to the plaintiff since 1887, a period of more than 35 years, and that she has been a matured woman since 1905, a period of more than 18 years, and that their adverse possession has ripened into title. This question was thoroughly considered and decided in the case of May v. C. & O. R. Co., 184 Ky. 493, 212 S. W. 131, where we cited a vast number of authorities, discussed the question thoroughly and, among other things, said:

> "Even where the life tenant attempts to convey the fee, and described the entire boundary, and this deed is placed of record, limitation does not begin to run against the remainderman until the death of the life tenant."

In this case, the defendants own the life estate of Dennis Patrick in this land, and their holding can not become

adverse to the plaintiff until that life estate is terminated, for until then plaintiff has no right to sue, hence the defendant's claim to title by adverse possession must fail for the same reason that their plea of limitations to the plaintiff's cause of action failed. That is, it fails because the life estate has not terminated, and plaintiff's right to sue for possession of her one-fourth of this land has never accrued to her.

This case is distinguished from the case of May v. C. & O. R. Co., *supra,* by the fact that the life estate in the May case terminated in 1897, and no suit was brought until 1913, a period of sixteen years, while here, the life estate has not terminated.

This case is also distinguished from the case of Webb v. Webb, 200 Ky. 488, 255 S. W. 137. There were two main branches and two questions in that case. Only the first one concerns us in this one. The Webb case was a controversy between two sets of children. The plaintiffs in that case alleged that they owned a tract of land which they had inherited from their mother, which had been occupied by their father as tenant by curtesy, and which tract of land they alleged their father had, in August, 1904, attempted to convey to his second wife, Jemimah Webb, for life, with the remainder to their two daughters, and that they were claiming same adversely to the plaintiffs. The defendants in that case answered by claiming this land belonged, not to Artie Webb, but to Jonathan Weeb, and filed with their answer the deed made in 1875 by which Jonathan acquired title. Nothing in avoidance of this deed was pleaded in reply. In this state of the record, the plaintiffs in the Webb case undertook to prove that this land had been given to their mother, Artie Webb, some time in the "sixties" by her father, who had bought it by title bond, and paid for it. The plaintiffs tried to prove that after their mother's death, their father in 1875 had caused the maker of this title bond to convey the land to him. Their contention was, in effect, an attempt to establish a constructive trust. This court said:

> "If appellees had pleaded in avoidance of the deed, this would have afforded appellants an opportunity to have pleaded the various statutes of limitation in bar to such relief. It is true that those statutes would not ordinarily run against the remainderman in a suit to recover possession of the prop-

erty, but it has been specifically held that in a suit attacking a deed seeking reformation or to have it declared a trust the statute may run."

And:

"We conclude that if the evidence could have been considered it was insufficient to establish a constructive trust."

That is all there is in this Webb case that it was necessary for the court to decide, on that branch of the case, and it is all there is in that case that can be invoked as authority for the contention of the defendants, and we can see nothing in that that can give them any comfort. We have read with care and interest not only the excerpts from that opinion quoted by the defendants in their brief upon the question of limitations, but also the entire opinion, and as there was no plea of limitations in the Webb case, there was no question of limitations for the court to decide, and nothing that may have been said relative to limitations in that case is binding on us in this case. The sole question in the first branch of the Webb case was this: Did Jonathan Webb, by the deed made in 1875, acquire title to this property for himself? The defendants in the Webb case insisted that he did, while the plaintiffs sought to establish a constructive trust in their favor. The court decided against the plaintiffs on that branch of the Webb case. That is all that was necessary for the court to decide on that branch of the case, and all that is of binding authority. The value of an opinion as a precedent is found in the conclusion of the court upon the question before it, and not in what the court may have said on points not necessarily involved. Therefore, in applying cases which have been decided, what may have been said in an opinion should be confined to and limited by the facts of the case under consideration when the expressions relied on were made, and should not be extended to cases where the facts are essentially different.

The case of Clark v. Parsons, reported in 69 N. H. 147, 39 Atl. 898, 76 Am. St. 157, is directly in point here, and while we regret to unduly lengthen this opinion, yet we find in this New Hampshire case such an excellent statement of the law that we have decided to quote very liberally from it. This was a bill in equity to remove a cloud upon plaintiff's title to a parcel of land of which

defendant claims to own an undivided one-half. In 1820, one Parsons conveyed the premises in question to Amos S. Parsons by warranty deed. Amos had three sons, Joseph, James and Isaac, and by his will gave the premises in dispute to Joseph for life, with remainder to James and Isaac. Isaac afterward died, leaving two sons, William and Lewis. In 1865, Joseph and James Parsons conveyed the land in dispute to one Berry, under whom the plaintiff claims, through mesne conveyances. Plaintiff received his conveyance in 1891, and has occupied the premises ever since. All of the conveyances were by warranty deed.

In 1876, Isaac's sons, William and Lewis, conveyed to defendant all their title and interest to the lands of which Amos died seized, and these deeds were immediately recorded. The defendant was acquainted with the land and the title thereto long before he purchased in 1876. He also knew that permanent improvements were being made on the premises, but he never claimed until after the death of the life tenant that he owned one-half of the land.

The court said:

"The plaintiff has not acquired title to the premises by adverse possession as against the defendant, nor did the statute of limitations begin to run against an action for possession until the death of the life tenant, Joseph, in 1891.

"But it is urged that Isaac or his sons might, at any time after the deed to Berry by Joseph and James, December 14, 1865, have maintained an action to establish their title to the remainder according to the doctrine of Walker v. Walker, 63 N. H. 321, 56 Am. Rep. 514. That case only gives the remainderman the right to establish his title when it is questioned. It is a right of which he may avail himself, or not, as he may elect. If he does avail himself of it, and the controversy is decided in his favor, it gives him no right to the possession or to a writ of possession during the existence of the life estate. Until the termination of the life estate no right of entry or of possession exists in favor of the reversioner. Until the right of entry and the right of possession to the property accrue, the statute of limitations does not begin to run against an action for the possession.

"It is claimed that when the life estate and the estate of one tenant in common in the remainder were granted to Berry, a merger of the life estate in the fee was effected by the coincidence of the two estates in one person and that the life estate in the entire property was thereby extinguished. It is a sufficient answer to say that the life estate in the undivided half of the remainder belonging to Isaac could not merge in the undivided half of the remainder belonging to Berry; neither could the conveyance of the life estate to Berry, construed as a surrender, inure to the benefit of Isaac or those who claim under him. 'Merger is coextensive with the interest merged, as in the case of joint tenants or tenants in common; and it is only to the extent of the part in which the owner has two several estates. An estate may merge for one part of the land and continue in the remaining part of it.' 4 Kent's Commentaries, 100, 101.

"Another question which arises is whether the defendant is estopped by his silence to assert his title to the land in question. The general principle of estoppel *in pais* is, that where one by his words, conduct or silence causes another to believe the existence of certain states of things and induces him to act on that belief, so as to alter his own previous position the former is precluded from averring against the latter a different state of things, as existing at the same time.' It is essential to the application of this principle that the party setting up the estoppel be ignorant of the truth of the matter in regard to which he claims he has been misled and induced to act to his injury by the conduct or slience of the party to be estopped. If he was fully acquainted with the facts of the case, there would be no estoppel. In respect to the title to real estate, if the party claiming the estoppel is acquainted with the true state of the title, or has an equal means with the other party of ascertaining it, as in the case of duly recorded deed, there will be no estoppel, at least from mere silence.

"The plaintiff claims that the defendant is estopped to assert title to the premises, because after he acquired the title he remained silent while the plaintiff made some permanent improvements. The situation of the title was shown by the records, and

the information in regard to it was equally open to both parties. Although the plaintiff and those under whom he claims had no actual knowledge of the defect in their title, they had by the records con-structive notice of it. Their failure to examine the records was not caused by anything said or done by the defendant. They might and should have in-formed themselves as to the title of the premises be-fore purchasing or making permanent improve-ments. Their failure to do so was their own fault, and they can not resort to an estoppel *based upon the defendant's silence* to avoid the consequences of their own negligence.''

In addition to their other defences, the defendants have pleaded estoppel and laches, and what was said by the New Hampshire court, which we approve, is a con-clusive answer to the plea of estoppel.

Surely the defendants can not be serious in what they say about laches, for this suit was begun on October 6, 1923, and the first oil that was pumped from this parti-cular tract was pumped on October 22, 1923.

The defendants have criticised the form of the judg-ment, and relative to that criticism, we will say the pres-ent waste statute of this state (section 2328, Kentucky Statutes) seems to be very similar in its language to the old English statute of Gloucester, 6 Edw. 1, c. 5. In 2 Bl. Comm. 283, on this subject, it is said:

"The punishment for waste committed was, by common law and the statute of Marlbridge, only single damages; except in the cause of a guardian, who also forfeited his wardship by the provisions of the great charter; but the statute of Gloucester directs that the other four species of tenant shall lose and forfeit the place wherein the waste is com-mitted, and also treble damages to him that hath the inheritance. The expression of the statute is, 'He shall forfeit the thing which he hath wasted;' and it hath been determined that under these words the place is also included. And if waste be done *sparsim* or here and there, all over a wood, the whole wood shall be recovered; or if in several rooms of a house, the whole house shall be forfeited; because it is im-practicable for the reversioner to enjoy only the identical places wasted, when lying interspersed

with the other. But if waste be done only in one end of a wood (or perhaps in one room of a house, if that can be conveniently separated from the rest), that part only is the *locus vastus,* or thing wasted, and that only shall be forfeited to the reversioner.''

The provision in our statute as to the life tenant is that "he shall lose the thing wasted, and pay treble the amount at which the waste shall be assessed.'' The provision in the English statute, *supra.* was, "he shall forfeit the thing which he hath wasted'' and also treble damages to him that hath the inheritance. As we have said before, our Kentucky statute is undoubtedly modeled after this English statute, therefore it should be construed as the English statute was construed.

In the case of Roby v. Newton, 121 G. 679, 49 S. E. 694, 68 L. R. A. 601, the supreme court of Georgia had before it the construction of the Georgia statute, which is similar to ours, and it quoted from Blackstone as we have, and gave a similar construction to the Georgia statute. The thing that was being wasted in this case was the oil that was being pumped from the land in which the plaintiff owned a one-fourth remainder interest. Under the statute the defendant, as life tenant of this one-fourth remainder interest, as a punishment for the commission of this waste could be adjudged to lose the thing wasted (one-fourth of this oil) and to pay treble the value of the waste committed. The court in its judgment did not give to the plaintiff treble the value of the waste committed, but simply the value of the waste committed; but the court did give to the plaintiff by its judgment, one-fourth of the oil being pumped from this land, thus adjudging that the defendants had by this waste forfeited their life estate in one-fourth of this oil. The statute provided two punishments. The court imposed one fully, and only partially imposed the other, and the defendants can not complain because of the leniency of the court's judgment.

It is the duty of a life tenant to so exercise his rights as not to injure the remaindermen. The law recognizes that it might be possible that damages alone would not be an adequate recovery from an insolvent life tenant, therefore the law provided both for forfeiture' and for damages. The court was fully warranted under the facts in this case in entering the judgment which it did.

The judgment is correct, fair and reasonable, and it must be affirmed.