RENDERED: JUNE 15, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2022-SC-0056-DG

GUY FERRILL, III, AS EXECUTOR OF THE                APPELLANTS
ESTATE OF WILLENA T. FERRILL;
WILLENA FERRILL; AND G & W LAND
ENTERPRISES, LLC THROUGH WILLENA T.
FERRILL, GUY FERRILL, III AND VICTOR
CURTIS FERRILL

                         ON REVIEW FROM COURT OF APPEALS
V.                      NOS. 2019-CA-0531 & 2019-CA-0532
                     NELSON CIRCUIT COURT NO. 13-CI-00107

STOCK YARDS BANK AND TRUST                   APPELLEES
COMPANY, TRUSTEE UNDER THE WILL OF
MAY T. DOTY, DECEASED; AMY CASSADY;
FRANK B. CHUMLEY, JR.; JILL WALTON
PUCKETT; LYNN SHIPLEY; AND MIKE
WALTON

**OPINION OF THE COURT BY CHIEF JUSTICE VANMETER**

**<u>AFFIRMING IN PART AND REVERSING IN PART</u>**

Under Kentucky law, a life tenant who commits waste against the corpus of an estate, "shall lose the thing wasted and pay treble the amount at which the waste is assessed." KRS[1] 381.350. Historically, our courts have recognized a distinction between voluntary waste and permissive waste and found that our

---

[1] Kentucky Revised Statutes.

waste statute—and its attendant statute of limitations—applies only to voluntary waste. *See Fisher's Ex'r v. Haney*, 180 Ky. 257, 202 S.W. 495, 496-97 (1918). Because the statutory language supports such a distinction, we reaffirm our long-standing case law and hold KRS 381.350 is applicable only in instances in which a party has pled voluntary waste. Accordingly, we reverse the Court of Appeals opinion insofar as it holds otherwise.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mary T. Doty died testate in 1989. Her will contained a provision bequeathing to Willena Ferrill and her husband, Guy "Allison" Ferrill, a life estate upon property, real and moveable, situated in Nelson County owned by Doty during her life. Upon the death of Willena and her husband, the property became part of the residuary estate to be bequeathed in one-third portions to three groups of individuals.[2] These three shares were placed into trusts over which Stock Yards Bank ("SYB") was appointed executor and trustee.

Following receipt of the life estate, the Ferrills engaged in a number of transactions that allegedly invaded and depleted the corpus of the estate. Because the precise nature of these transactions has no bearing on the outcome of this appeal, we do not address them here beyond noting that these transactions occurred at various times between the late 1990s and 2011. SYB apparently became concerned over the administration of the life estate as early as 1998 and subsequently sought semi-regular accountings from the Ferrills,

---

[2] Willena Ferrill passed away during the pendency of this matter on September 14, 2021.

2

with varying success. Ultimately, SYB and the remaindermen brought this action in 2013, asserting claims of waste, fraud, conversion, and breach of fiduciary duties against Willena and others (collectively "the Ferrills") connected to sales of estate property.

In 2015, SYB sought summary judgment and the parties then engaged in extensive discovery. The Ferrills similarly sought summary judgment. By order entered September 5, 2018, the trial court granted summary judgment in favor of the Ferrills on counts 1, 2, 3, and 5, which included claims based upon waste, fraud, and breach of fiduciary duty. In large part, those claims were dismissed for failure to comply with their respective statute of limitations. Specifically, as to waste, the trial court applied the five-year statute of limitations to voluntary waste as applied in *Fisher's Ex'r* and held that because the claims all accrued at the time of their commission, the waste claims were barred by the statute of limitations. Following motions to alter, amend or vacate, the trial court subsequently entered an order vacating parts of the September 5 order and supplementing with an amended order which varied little from the original except in addressing a claim that had been missed and altering some of the damage awards. The parties then partially resolved the litigation by agreed order. This order made final and appealable the claims granted and dismissed in the previous orders and otherwise dismissed the remaining claims for conversion and attorney's fees.

The parties subsequently appealed. The Court of Appeals reversed the trial court as to any claims dismissed as untimely filed under the statute of

3

limitations. Relying upon *Superior Oil Corp. v. Alcorn*, 242 Ky. 814, 47 S.W.2d 973 (1930), the Court of Appeals held that the statute of limitations on the various claims brought by SYB did not begin to run until Willena's death in 2021. Accordingly, such claims were timely brought and their dismissal was error.[3]

The Ferrills moved for discretionary review pursuant to CR[4] 76.20,[5] which this Court granted.

## II.  STANDARD OF REVIEW

Upon review of a trial court's grant of a motion for summary judgment, this Court must ask,

> whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (internal citations and quotation marks omitted). Here, because the question presented is purely one of law, we need not defer to the trial court and our review of the issue is *de novo*. *Seeger v. Lanham*, 542 S.W.3d 286, 296 (Ky. 2018).

---

[3] The Court of Appeals did not address the quandary of how the trial court was to dispose of the claims when its order was entered in 2019, two years prior to Willena's death.

[4] Kentucky Rules of Civil Procedure.

[5] The provisions of CR 76.20 are now contained in Rule of Appellate Procedure (RAP) 44.

4

### III. ANALYSIS

The primary issue presented by this matter is when the statute of limitations began on the claims brought by SYB. Key to resolving this question is an analysis of the concept of "waste" as it exists within Kentucky law. Black's Law Dictionary defines "waste" as "[p]ermanent harm to real property committed by a tenant (for life or for years) to the prejudice of the heir, the reversioner, or the remainderman." *Waste, Black's Law Dictionary* (11th ed. 2019). Traditionally, Kentucky case law has recognized two classes of waste: voluntary and permissive.

> 'Voluntary waste' consists of the willful destruction or carrying away of something that is attached to the freehold, as for example trees or stone, or coal or other mineral substances; while 'permissive waste' is the failure to take reasonable care of the premises by neglecting for example to keep the buildings and fencing in such a state of repair as would be considered reasonably sufficient under the circumstances.

*Fisher's Ex'r*, 202 S.W. at 496. Although this distinction has sometimes been questioned,[6] no opinion of this Court has ever collapsed the two classes into one.

> Waste by a tenant for life or years is addressed in our statutes as follows:
>
> If any tenant for life or years commits waste during his estate or term, of anything belonging to the tenement so held, without special written permission to do so, he shall be subject to an action

---

[6] *Springfield v. Springfield*, No. 2021-CA-0358-MR, 2022 WL 16841998, at *4 (Ky. App. Nov. 10, 2022) ("[W]e question whether there remains a basis to distinguish between the legal remedies afforded for voluntary waste under KRS 381.350 and the equitable remedies afforded for permissive waste[]").

of waste, shall lose the thing wasted, and pay treble the amount at which the waste is assessed.

KRS 381.350 (emphasis added). This statute has been in existence substantially since 1798 but has its roots in the English Statute of Gloucester enacted in 1278. The 1798 enactment not only expanded "waste" to include waste committed by holders of a life estate, but also provided for treble damages and forfeiture of "the thing he hath wasted." *Salyer's Guardian v. Keeton*, 214 Ky. 643, 283 S.W. 1015, 1018 (1926); Alva A. Hollon, *Meridith v. Ingram: A Failure to Shed the Shackles of Stare Decisis*, 62 Ky. L. J. 856, 857 (1974). The similarities between the Statute of Gloucester and the language of our own statute—present and past—has led the courts to conclude that our waste statute is to be construed consistently with its English forebear. Keeton, 283 S.W. at 1018. Although construction of such a longstanding statute has been by no means consistent, *see* Hollon, *supra*, at 857-58, Kentucky cases have adopted the reasoning of English courts and held that our waste statute referred solely to an action for voluntary waste. *See, e.g., Collins v. Security Trust Co.*, 206 Ky. 30, 266 S.W. 910 (1924) ("[i]t is thoroughly established that our Statutes on the subject of waste relate only to voluntary waste, and that in enacting them the Legislature conferred upon courts of equity exclusive jurisdiction of all cases involving permissive waste[]"); *Fisher's Ex'r*, 202 S.W. at 496 ("[t]he right to maintain the statutory action . . . applies only to voluntary waste"); *Smith v. Mattingly*, 96 Ky. 228, 28 S.W. 503 (1894) ("[t]here is an obvious and well–recognized distinction between voluntary waste . . . and permissive waste . . . and that the statute quoted was intended to authorize an

6

action for voluntary waste only, not for permissive waste, is made by the language used too clear for discussion[]").

The effect of this distinction, that an action for voluntary waste lay in law while an action for permissive waste lay in equity, led to a recognition that the cause of action accrued, and the statute of limitations began to run, at different times for the respective class of waste. The statute of limitations for permissive waste does not begin to run until the death of the life tenant. *See Meredith v. Ingram*, 495 S.W.2d 171, 172 (Ky. 1973) (holding "[the remainderman's] cause of action [for permissive waste] does not accrue, for limitation purposes, until the death of the life tenant[]") (citing *Prescott v. Grimes*, 143 Ky. 191, 136 S.W. 206 (1911); *Collins*, 266 S.W. 910)). By contrast, the limitation period on an action for voluntary waste begins "from the time when the voluntary waste complained of was committed." *Fisher's Ex'r*, 202 S.W. at 496. Further, the limitation period for voluntary waste has been determined to be five years as prescribed in Ky. Stat. § 2515, the predecessor to our current KRS 413.120. *Id.*

This jurisprudence underlies the issues presented by SYB and the Ferrills. To resolve this matter, we are faced with two options: affirm our longstanding distinction between voluntary and permissive waste or overrule the decisions of our predecessor courts and collapse the two categories into simply "waste."

Ultimately, SYB is correct that the resolution is most readily found in the language of the statute itself. Crucially, KRS 381.350 applies to any tenant

who "*commits* waste during his estate". (Emphasis added). "Commit" denotes a purposeful action and, as Merriam-Webster indicates, it can be defined as "to carry into action *deliberately*." *Commit*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/commit. Similarly, the 1828 edition of Webster's Dictionary defined "commit" in relevant part as "to do; to effect or perpetrate[.]" *Commit*, Webster's Dictionary 1828, https://webstersdictionary1828.com/Dictionary/Commit. Our predecessor court observed "an obvious and well–recognized distinction between voluntary waste, which consists in the *commission* of some destructive act, and permissive waste, consisting in *omission* by a tenant for life or years to keep the land and tenements in proper repair[.]" *Smith*, 28 S.W. at 503 (emphasis added). Thus, the plain language of the statute bears out the assertion in *Smith* that the predecessor statute, containing largely similar language, was meant to apply to voluntary waste alone "by [] language [] too clear for discussion." *Id.*

This conclusion is further supported by the analysis of the Court of Appeals of Ohio in *Reams v. Henney*, 97 N.E.2d 37 (Ohio Ct. App. 1950). The Ohio court was called upon to determine the proper statute of limitations for permissive waste. The court addressed Ohio's equivalent to KRS 381.350 which stated,

> A tenant for life in real property, who commits or suffers waste thereto, shall forfeit that part of the real property of which such waste is committed or suffered, to the person having the immediate estate in reversion or remainder. Such tenant also will be liable in

8

damages to the person having the immediate estate in reversion or remainder for the waste committed or suffered thereto.

*Id.* at 410-11. Contrasting the Ohio provision with Kentucky's, the court wrote,

> [T]he Kentucky statute authorizes an action to be brought for voluntary waste. It does not authorize an action to be brought for permissive waste. It is apparent that the provisions of the statute in Ohio and the statute in Kentucky are dissimilar in that the Ohio statute covers both voluntary and permissive waste, whereas the Kentucky statute only covers voluntary waste.

*Id.* at 414. The basis for that conclusion turned on the language of the respective statutes: "The word 'committed' refers to voluntary waste, and the word 'suffered' refers to permissive waste." *Id.* at 411. While Ohio's statute addressed waste "commit[ted] or suffer[ered]", Kentucky's statute only applied to waste "commit[ted]". *Compare* Ohio Rev. Code § 2105.20, *with* KRS 381.350. As recently as 2015, the Court of Appeals of Ohio has cited to *Reams* and affirmed its reasoning as well as recognized the distinction between voluntary and permissive waste.

Given the language of the statute and the fact that a number of jurisdictions retain the two categories of waste (at least in the realm of life estates),[7] we hold *Fisher's Ex'r* and such related cases continue to be accurate statements of the law of waste as it exists in Kentucky. Accordingly, KRS 381.350 continues to apply only to claims of voluntary waste.

---

[7] *See, e.g., Estate of Johnson v. Director, Division of Taxation*, No. 010286-2015, 2018 WL 3018883, at *5 (N.J. Tax Ct. June. 15, 2018) ("New Jersey Courts have recognized two main varieties of waste, voluntary and permissive[]"); *Kennedy v. Meech*, 961 N.E.2d 164 (Mass. App. Ct. 2012) (Noting, "the line between voluntary and permissive waste is often not an easy one to draw"); *Wells Fargo Bank Minn., N.A. v. Diamond Point Plaza, L.P.*, 908 A.2d 684 (Md. Ct. Spec. App. 2006) ("There are principally two different types of waste: voluntary and permissive waste[]").

We further re-affirm that the five-year statute of limitations for voluntary waste claims begins when the waste is committed.[8] Although we acknowledge that the reasoning in *Fisher's Ex'r* for beginning the limitations period upon commission was scant at best, compelling reasons exist to adhere to that holding. Aside from the doctrine of stare decisis—"the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion[]"[9]—placing the accrual point at the death of the life tenant would render superfluous one provision of KRS 381.350: that the life tenant "shall lose the thing wasted." By this, the statute directs that in instances of voluntary waste the life estate, or a portion of it, shall be forfeited by the tenant to the reversioner. *Salyer's Guardian*, 283 S.W. at 1018. Should an action for voluntary waste accrue only at the death of the life tenant, no need would exist for this remedy as the estate would already have passed to the remaindermen, thus rendering a portion of the statute unnecessary surplusage.

Further, practical considerations militate against beginning the limitations period at the death of the life tenant. Primarily, this Court is concerned that the treble damages of KRS 381.350 would incentivize remaindermen to sit on their rights as the corpus of the estate is despoiled so

---

[8] We need not address whether the statute of limitations would be tolled pending discovery of the waste by the remaindermen. In each of the counts dismissed by the trial court, dismissal would have been appropriate either from the date of occurrence or from the date of discovery.

[9] *Vasquez v. Hillery*, 474 U.S. 254, 265 (1986).

10

that they may later realize a three-fold recovery. Given the present state of our jurisprudence on permissive waste, which SYB asks us to apply to voluntary waste claims, malfeasance committed by the life tenant against the estate at *any* point would be actionable upon his or her death, with treble damages being the reward.[10] Finally, we note that our approach to permissive waste is similarly not universally followed,[11] and our present rule is less harsh than that articulated in *Reams* by the Ohio Supreme Court which limits actions for both voluntary *and* permissive waste to events occurring up to four years prior to the action. *Reams*, 91 N.E.2d at 416. Voluntary waste is not the result of a life tenant merely taking a lackadaisical approach to maintaining the estate; rather, such waste is active, deliberate intrusions committed upon the estate. In that instance, to allow the remaindermen to sit idly by while such malfeasance occurs seem to us to be the less desirable option.

Those matters resolved, we return to the case at hand to resolve one final contention by SYB. It argues that regardless of our ruling on the voluntary waste question, its complaint never explicitly asserted a claim for voluntary waste and can thus reasonably be construed as an action for either voluntary or permissive waste. This argument is without merit. SYB, in its First Amended Complaint avers that the Ferrills' conduct "constitutes waste for which the Plaintiff is entitled to *treble damages* . . . pursuant to *KRS 381.350.*

---

[10] Deliberate destruction of the estate occurring decades prior to the running of the statute of limitations could potentially become the subject of litigation.

[11] *See* Hollon, *supra,* at 864-65

(Emphasis added). The waste claim was clearly pled pursuant to the statute, and the law of Kentucky for over 100 years has been that KRS 381.350 applies only to claims for voluntary waste. Accordingly, the trial court was correct that SYB stated claims for voluntary waste.

As to the fraud and breach of fiduciary duty claims, also dismissed by the trial court pursuant to the statute of limitations, our law is clear that those claims were time-barred. Fraud claims accrue within five years of the discovery of the fraud, with a ten-year limit on discovery from the time the fraud was committed. KRS 413.130. The parties at the trial level agreed as to the statute of limitations for breach of fiduciary duty, but SYB now argues such claims should not accrue until the termination of the life estate. Nonetheless, an action for breach of fiduciary duty has been held to accrue upon the commission of the breach. *Middleton v. Sampey*, 522 S.W.3d 875, 878-79 (Ky. App. 2017). We see little justification to carve out an exception for fraud or breach of fiduciary duty committed as to a life estate, particularly in light of our previous discussion of voluntary waste. Accordingly, those claims were properly dismissed.

## IV. CONCLUSION

For the foregoing reasons, the holding of the Court of Appeals is reversed in part and affirmed in part. To be clear, we affirm in full the Nelson Circuit Court's Order granting summary judgment in favor of the Ferrills, as modified in its December 14, 2018 Order as well as all other issues determined by the

12

trial court and do not disturb any issues resolved by the parties' March 4, 2019 Agreed Order.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Matthew Creighton Hess
Bell Hess & Van Zant P.L.C.

COUNSEL FOR APPELLEES:

David Brandeis Tachau
Tachau Meek P.L.C.