## Kentucky River Consolidated Coal Company v. Frazier, et al.

### Same v. Same.

(Decided December 3, 1914.,

### Appeals from Letcher Circuit Court.

1. Land—Obligation to Convey—Lapse.—Where an extension of time to purchase is given, the obligation to convey will lapse at the expiration of the extended time.

2. Pleading—Equities.—Under a prayer for "all proper relief," the court is warranted in fixing the equities as shown by the pleadings and proof.

3. Dower—Mines.—Dower will not attach to unopened mines, but mines opened any time during coverture are subject to dower.

4.   Waste.—A sale or commercial use of minerals or timber by a doweress is waste.

5.   Parties—Judgment.—Where one is not a party to an action, his interest in the subject matter is not affected by the judgment.

O'REAR & WILLIAMS and JAMES B. HOGE for appellant.

D. D. FIELDS & SON and D. I. DAY for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The appeals in these two cases are consolidated and will be heard together. In the first, the children and heirs-at-law of Stephen Frazier sue the appellant, and the court granted their prayer to quiet title to the 200 acres of land in controversy.

In the other suit, it appears that Monroe Frazier, who was a brother of Stephen, had joined in the deed in order to convey 59 acres of it, to which part it was thought he had title. He asks that appellant be required to accept from him a return of that part of the consideration which he received, viz., $250, with interest, and, on the idea that appellant had procured his signature to the deed by fraud, he asks that appellant be required to reconvey to him, and furthermore, that he be released from liability on the warranty of title. The court released him as warrantor, but refused to cancel his deed. In a measure, this case is very similar to Frazier v. Combs, 140 Ky., 77. Title to a part of the same land is involved, and practically the same facts are relied upon. As stated in that case, Soloman Frazier, on March 5, 1888, conveyed to his son, Stephen Frazier, a tract of land consisting of three surveys. The deed was in the usual form, except that Soloman Frazier reserved full control of the property during his life, and so much of the rents and profits as might be necessary to maintain him. There was another condition: that Stephen Frazier, the second party, should not have power to alienate any of the lands during the life of the grantor.

June 1, 1903, while Soloman Frazier was living, Stephen Frazier and wife executed to William H. Dye an option or title bond, agreeing to convey within six months the coal and mineral rights on and under the 200 acres of land, and which was one of the three tracts conveyed to him, mentioned in the Combs case, *supra*. We shall discuss the meaning of this option or title bond later.

January 6, 1894, Stephen (ignoring the title bond to Dye) conveyed the land in fee to his wife, Minta.

On October 10, 1894, Soloman Frazier died. After the death of Soloman Frazier, Stephen Frazier, by a writing which he alone signed, extended to William H. Dye the time of purchase under the title bond to October 1, 1905.

November 17, 1905, Stephen Frazier was killed. He was intestate, and died without making or having been requested to make a conveyance of the land. Monroe Frazier assisted Minta Frazier in employing counsel to prosecute her husband's slayer. For $600 which he thus expended, and on June 4, 1906, Minta Frazier conveyed to Monroe 59 acres of the 200 acres described in the title bond. Subsequently, Monroe Frazier and the widow joined in a deed to the appellant coal company conveying all the coals under the 200 acre tract. The appellant had become the owner by assignment of the original title bond executed by Stephen Frazier in 1903, with the written extension of same to October 1, and this deed from Monroe and Stephen's widow was made to carry out that contract. This controversy involves nothing but the coals underlying the lands. So far as the case affects Monroe, we are of the opinion that the evidence shows that he joined in the deed for the sole purpose of transferring his interest in the 59 acres. He received the consideration for 59 acres, and made no claim to the remainder of the land; there was no reason why he should join in a conveyance of that, other than that both interests could be transferred by one deed. While the warranty clause is broad enough to include all the land described in the deed, yet everything indicates that Monroe's connection with it only affected the 59 acres, and both parties so understood it. It is not pretended that the purchase was made or in any wise influenced by reason of his warranty. More than this, Monroe's signature was solicited and urged, if not coerced, by appellant's agents under the representation that he was bound to convey by reason of Stephen's obligation under the old title bond, and that if he did not sign, suit would be filed to compel him to sign it. The purpose was to get whatever title Monroe had, and we think the court did not err in releasing him as a warrantor. Sibley v. Holcomb, 104 Ky., 670.

Under the authority of Frazier v. Combs, *supra,* all writings executed by Stephen Frazier in attempted

alienation of the estate prior to the death of his father are void. These include the title bond executed to William H. Dye, in 1903, and the conveyance to his wife, Minta, January 6, 1904. And that being true, the heirs-at-law of Stephen Frazier were not divested of title when Minta Frazier, his widow, undertook to convey on June 4, 1906.

But appellant argues that Stephen Frazier ratified the title bond after his father's death by granting an extension until October 1, 1905. The writing which we have been referring to as a title bond recited a cash payment of $35 and obligated the grantee to pay, six months from date, $4.50 per acre. This provision followed:

"Before the grantor can demand, as a matter of strict right, the payment of the said deferred purchase money, the number of acres is to be determined by actual survey * * * at the expense of the grantor, and the grantor shall furnish all title papers showing good title in the grantor. * * *

"The grantee is hereby bound to bear expense of abstracting title to said land and to pay the balance due on same within six months from this date, or as soon thereafter as the surveying and abstracting above referred to can reasonably be done. This contract shall be null and void at the end of six months and the payment made herein and hereinbefore mentioned shall be the absolute property of the grantor in full liquidation of damages hereunder."

The time extension of this contract above referred to is not dated, but it recites: "In consideration of the payment of said $35 this day made to me, we agree to extend the time at which the next payment on the purchase price of coal lands shall be made to October 1, 1905, and guarantee that, upon the balance of the purchase price being paid to me at that time, or as soon thereafter as the survey of my tract shall be completed, we will transfer said lands as agreed to be done in said original contract." It will be seen that these writings were not intended to be of themselves a conveyance. There was nothing more than an obligation to convey within a limited time upon certain conditions. It is true Stephen Frazier did not have the "strict right" to demand payment until he had determined the number of acres by actual survey, but it does not appear from the pleadings that he did not do this within the time stated. There is nothing in the case to show that Dye or his assignee had

ever requested a conveyance or rejected a survey, or that Frazier had in any way failed to meet his obligations, conceding the validity of the extended contract. It is clear to us that time is the essence of this contract. The very fact that appellant thought it necessary to get an extension of time is sufficient to support this statement. Consequently, the obligation lapsed at the expiration of the extended time, in the absence of a showing that survey and conveyance had been demanded before the lapse.

But appellant insists that its conveyance from the widow in 1906 did serve to pass her dower interest in the minerals, and that the court should have so adjudged on appellant's prayer for all proper relief. Under such a prayer, the court is warranted in fixing the equities as shown by the pleadings and proof. But in this case the widow is not a party; it does not appear that she is still living, and appellant's pleadings do not make a claim for dowable share. As above indicated, the only estate involved is the minerals. Like timber cut and converted into personalty before the husband's decease, mines opened and worked at any time during coverture are subject to dower. But there is no dower in unopened mines. A doweress has no right to cut timber or mine coal otherwise than as subservient to a comfortable enjoyment of her life estate. A sale or commercial use of either timber or minerals is an act of waste, and lessens the estate of the remainderman, and for that reason is not permissible. See Fritz v. Tudor, 1 Bush, 28; Hogg v. Henseley, 39 S. W., 247; Whitaker v. Lindley, 8 Ky. L. R., 690.

We cannot say from the record that any mines were then or are now open, and, even if it did appear that the widow was still living or was a party to the action, there is nothing in the case upon which to base a judgment with reference to dower.

Neither can we accept appellant's contention that the original title bond operated as a conversion of the real estate into personalty so that appellant, under the widow's conveyance in 1906, would be entitled to one-half its value as her distributable share. Whatever effect the writing may have had as between the distributees, we are of the opinion, as before stated, that as to appellant it lapsed for non-performance.

The judgment appealed from perpetually enjoins appellant "from claiming the said minerals or any mineral rights or privileges upon or under the lands hereinafter described against the plaintiffs." Appellant says

that, although its petition and proof may be defective with respect to dower, yet the judgment is so broad as to preclude the assertion of such a claim hereafter. It is enough to say, that the judgment shows specifically that the injunction goes to a claim against the plaintiffs. The widow was not a plaintiff; she was not a party to the action. On this state of the record, we do not mean to say what, if any, interest the widow has in the estate. If she had or has a dower in the property, it is not affected by the judgment.

The judgment is affirmed on both appeals.