# DECISIONS

## OF THE

# Court of Appeals of Kentucky

## Crain, Guardian v. West, Administrator.

(Decided March 11, 1921.)

### Appeal from Estill Circuit Court.

1. Descent and Distribution—Dower—Mines and Minerals.—Where oil wells, or other mines, have been opened by a deceased husband, upon his lands, before his death, or by lessees after his death, under enforcible contracts made with the husband, the royalties therefrom are profits arising from the use of the lands, and are a portion of the dowable real estate of the husband, within the meaning of section 2138, Ky. Stats.

2. Descent and Distribution—Mines and Minerals—Royalties.— Where oil wells, or other mines are opened by a widow upon lands of her deceased husband, which have been assigned to her as dower and after such assignment, or by the widow and the remandermen; oil, in place, being a mineral substance and a portion of the land, and the widow having no right to open the mines, nor the remaindermen to the use of the land during the continuance of the life tenancy, the royalties, as between the widow and remaindermen are governed by the same rules, which apply to the use of other real estate, held in a similar way.

3. Descent and Distribution—Mines and Minerals.—When oil wells or other mines are opened by a husband upon his lands, or after his death under enforcible contracts made with him, he has thereby fixed the mode of enjoyment and the source of profit of the lands.

4. Descent and Distribution—Setting Apart to Widow and Children —Partition.—Property exempt from distribution and sale and directed to be set apart to the widow and infant children of an intestate, under section 1403, subsection 5, Ky. Stats., was intended by the legislature to be under the supervision and control of the widow but for the joint use and enjoyment of the widow

and children, and a partition of same will not be directed, unless there is some equitable reason for so doing, such as circumstances, which, without the fault of the children, deprived them of any use or enjoyment of the property.

E. C. O'REAR, WM. L. WALLACE and A. S. JOHNSON for appellants.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—
Affirming.

Silas McIntosh, domiciled in Estill county, died, and left surviving him, his wife, Prudy McIntosh, and three infant children, the two older of whom were nineteen and sixteen years of age respectively, and the age of the youngest is not disclosed. He was the owner at the time of his death of certain lands, in the county, wherein he resided, but, had previous thereto granted leases upon the lands to grantees, who had undertaken to bore for oil thereon, and in the event of success to pay to the grantor a royalty of a certain part of the oil obtained, for the rights granted to them under the lease, retaining the remainder of the oil for their services and outlay in the exploration for and producing the oil. Under the lease, producing wells had been dug, upon two tracts of the land, from the wells upon one of which a royalty of one-eighth and from the wells upon the other tract, a royalty of one-sixteenth of the oil was reserved.

The decedent owned no personal property, at the time of his death, except a machine for sinking oil wells.

The administrator with the will annexed, of decedent, instituted this action against the widow and heirs, for a settlement of the estate and to obtain the advice of the chancellor as to what interest in the estate, the widow was entitled, and especially to be advised, as to whether she was entitled to be endowed of the royalties reserved for the oil production upon the land, under the lease, and to her rights therein, if any, prior to the assignment of dower. The petition discloses the fact, that the decedent died testate and that his will had been duly probated, but, no prayer is made for a construction of the will, and no copy of it is embraced in the record, but, we assume from the fact, that the court seems to have ignored it and the counsel treat the case as being uninfluenced by the provisions of the will, that the widow either renounced its provisions, or else its terms were such, as to have no in-

fluence upon the matters involved upon this appeal, and hence we will treat the estate as that of an intestate, as the court below, and counsel here have done, so far as it relates to the determination of the questions presented by the appeal.

The court in defining the rights of the widow in the estate of her deceased husband, among other things, adjudged, that the administrator should pay to the widow, the sum of $750.00 as property, exempt from sale and distribution, under section 1403, subsection 5, Ky. Stats. and further, adjudged, that from the death of the husband until the assignment of dower, that the widow was entitled to receive one-third of the royalties from the oil production upon the decedent's lands. From these decisions, of the court, the guardian of the infant children of decedent has appealed, and they will be considered in their order.

(a) The statute, upon the authority of which the judgment directing the payment to the widow of the $750.00, exempted property, is as follows:

"Personal property or money on hand or in bank to the amount of $750.00 shall be exempt from distribution and sale and shall be set apart by the appraisers of the estate of an intestate to his widow and children, or, if no widow, to his infant children or child surviving him. The appraisers shall state in their appraisement the money or the articles and value of each set apart by them to the widow, or infants, separately to the articles appraised for sale, but, if the widow be present at the time of the appraisement, or any one authorized by her in writing, she may make her selection of the property appraised to the amount of $750.00 and said appraisers shall so report. . . ."

The infant children, as it appears from the stipulation as to the facts, filed with the record, are not the children of the widow, but, the children of decedent by a former wife. It, also, appears that two of them are nearly or quite grown, and that neither of them resides with the widow. The foregoing statute is a substitute for the one existing previous to the year, 1912, under which, the exempted property was for the exclusive benefit of the widow, if there were no infant children of the intestate residing with her, and although the intestate left infant children, they had no interest in such property, if they did not re-

side with her.    Newman v. Winlock, 3 Bush. 241; Alexander v. Alexander, 86 Ky. 688; Howland v. Harr, 123 Ky. 732.    The change in the language of the present statute from the former one providing that the setting apart of the exempted property shall be to the "widow and infant children," instead of to the "widow or infant children" as in the former statute, has under certain states of facts, required different limitations to be placed upon the respective rights of the widow and children.    That the legislature intended, that the widow should have supervision and control of the exempted property, unless an equitable reason exists to the contrary, is strongly indicated by the fact, that she is authorized to make a selection of the property to be set apart, and the appraisers are required to act in accordance with her selections, as to the property to be set apart, so that it does not exceed in value the sum of $750.00.    In two instances, only has this court ever upheld the contentions of infant children, that the widow should submit to a division or partition of the exempted property, between herself and the children. In Eversole v. Eversole, 169 Ky. 793, and in Landrum v. Landrum, 187 Ky. 196, such a conclusion was arrived at. In the former instance the mother was convicted, as a felon, and confined in prison, where it was impossible for the children to enjoy the property with her.    In the latter instance the widow had ceased to be a housekeeper, and the children were involuntarily compelled to find homes for themselves elsewhere, and the exempted property, which was in kind, was stored by the widow in a place distant from their former home.    In either instance, it had become impossible, without fault upon their part, for the children to have any use of the property during their infancy, and a sale and partition was approved. The legislature intended, that the exempted property should be jointly used and enjoyed by the widow and the infant children of an intestate, and so long as the widow maintains a home, to which the children have access and are permitted to use and enjoy the property, the widow's control and custody of it should not be disturbed, but, where the unity of the family, from no fault of the children, can be no longer maintained, equity will assert itself to secure the rights of the children in the property. In the instant case, however, no equitable reason is shown, which would justify the division of the exempted money.    It does not appear, that the widow does not

maintain a home, to which the children have access, or that it is any fault upon her part, that they do not reside with her, or partake of the benefits of the money, or that she refuses in any way to share the benefits of it with them.

(b) The second ground of the appeal grows out of the application of section 2138, Ky. Stats. which is as follows: ''The wife shall be entitled to one-third of the rents and profits of her husband's dowable real estate from his death until dower is assigned, . . . '' The same principles and rules, which govern a widow's right of dower, in mines of various kinds, upon the lands owned by her deceased husband, apply to and govern her right of dower in oil wells. Oil, in place, in the land is a mineral and part of the land itself, and so far as it relates to the questions to be considered, is similar to coal, iron, lead or other solid mineral substances, which may be in lands. Sawyue v. Lone Acre Oil Co. 69 L. R. A. 991; Stoughton's Appeal, 88 Pa. 198; Frank v. Haldeman, 53 Pa. 229, 249; Williamson v. Jones, 39 W. Va. 231; Hague v. Wheeler, 157 Pa. 324; Betman v. Harness, 42 W. Va. 433. That oil wells and other mines which a deceased husband opened upon his lands during his life, or are opened upon the deceased husband's lands after his death, by persons with whom he had entered into enforcible contracts for that purpose, while living, are real estate of which his widow is dowable, is now no longer a subject of dispute. Priddy v. Griffith, 150 Ill. 560; K. R. C. Coal Co. v. Frazier, 161 Ky. 374; Whittaker v. Lindsey, 8 R. 690; Koen v. Bartlett, 41 W. Va. 559; Daniels v. Charles, 154 Ky. 235; Higgins' Fuel & Oil Co. v. Snow, 51 C. C. A. 267; Moore v. Rollins, 45 Me. 495; Hendrix v. McBeth, 61 Ind. 473; Lenfers v. Hinke, 73 Ill. 405; Hook v. Garfield Co., 112 Iowa 210; Alderson v. Alderson, 46 W. Va. 242. The extent of the property, in an oil well, which may be assigned for dower is not a subject for consideration, upon this appeal, as dower has not been assigned in this action, and the question for decision is the authority of the court to adjudge to the widow one-third of the royalties to be paid by the lessee for the production of oil, from the death of the husband until dower shall have been assigned. The foregoing statements in reference to the doctrines, governing the right of dower in mines of all kinds is for the purpose of showing, that the income from same is dow-

able real estate, within the meaning of section 2138 Ky. Stats., *supra*. The provision of that statute, which entitles the widow to one-third of the rents and profits of the husband's dowable real estate, from his death until the assignment of dower, does not seem to have much reference to what is finally assigned to her for dower and the question here is, whether the royalties from the production of the oil are "rents and profits of the husband's dowable real estate," within the meaning of the statute. The petition avers that the royalties, under consideration, were certain percentages of the oil produced, and it is to be inferred, that in accordance with the usual custom in such cases, the oil constituting the royalties was not separated from the other, but, all goes in the pipe lines or receptacles for marketing the oil, together, and the price of the royalties is paid to the lessor. Hence, such a royalty is not thought of in property in kind, but, in money. A strict definition of the term "rent," would doubtless not include such a royalty, but rent for the use of land may be reserved in money, property, labor, or in a part of the produce of the land, as when a tenant pays the landlord a certain percentage of the crops grown. Where a statute authorized a probate court to direct an administrator to take possession of real estate and let it to rent for the payment of debts, and a mine was leased for a royalty, it was held in Meeks v. Clear Jack Mining Co., 141 Mo. 648, to be rent, within the meaning of the statute, the court saying: "for the word rent means a compensation for the use of lands demised and is treated as a profit issuing out of the land and may be in the form of royalty." In Ind. Nat. Oil & Gas Co. v. Stewart, 45 Ind. 554, a royalty as used in a gas lease was defined to be "a share of the product or profit reserved by the owner for permitting another to use the property." In Kissick v. Bolton, 134 Iowa 650, a royalty in a coal mining lease was defined to be a "share of the profit reserved by the owner for permitting the removal of the coal and is in the nature of rent." See also Saulsbury v. Saulsbury, 162 Ky. 486. From a reading of the various opinions of many courts, which have in one way and another considered royalties arising from the products of mines, it will be found that they have in referring to the royalty, indiscriminately designated it, as a royalty, rent or profit, as though the terms were interchangeable, in the sense there used. It is impossible to comprehend, why it it not a pro-

fit arising from the use of the land, although it is insisted, that a lease to produce oil, for a roy-alty reserved, is a sale of a portion of the land itself and for that reason a widow could not as dower have any more than the interest which might accrue upon the royalty. The latter doctrine, however, when applied to a case where the wells are opened before the life estate is created, is irreconcilably inconsistent with the well established one, that a life tenant, may work mines, to exhaustion, which are already opened, when the life estate is created, and may take the entire proceeds and can not be required to account. William v. Jones, 43 W. Va. 562; Gerkins v. Ky. Salt Co., 100 Ky. 735; Moore v. Rollins, *supra;* Daniels v. Charles, 172 Ky. 238.

If the theory, that as between the surviving widow and the remaindermen, a royalty paid upon the production of oil from wells opened in the lifetime of the husband is a sale of real estate, is correct, then when a life tenant works mines, opened before the life estate was created, he sells the corpus of the estate and appropriates the proceeds, and in arriving at such conclusion, it would necessarily be strangely held, that a royalty upon the production of an oil well, which was opened and producing in the life of the husband, after his death and before the assignment of dower, was a sale of real estate, but, if the same well should be assigned for dower, the royalty would thereafter be profits or rents for the use of the land, and the widow would be entitled to the royalty instead of the interest upon it. In Daniels v. Charles, 172 Ky. 241, referring to the well established rule, that a widow may work mines, which were opened in the life of the husband if assigned to her for dower, and the further rule, that she was guilty of waste in opening new mines, this court said:

"The reason for the general rule applicable to opened mines is that the lands had been devoted to mining purposes by the decedent during his lifetime, and the mode of enjoyment and the source of profit had been fixed and determined by him. In such cases mining is a mere mode of use and enjoyment, fixed by the owner, and to extract the minerals is but to take the accruing *profits* from the land." Hence, the royalties in the instant case where the wells were opened and producing in the lifetime of the husband, are judicially construed to be the accruing profits from the land and as a result of such construction,

one-third of them, the widow is entitled to have from the death of the husband, until the assignment of dower. The cases relied upon by appellant, to support his contention, that the widow is not entitled to one-third of the royalties until dower is assigned, but is only entitled to the interest on one-third of the royalties, have no application to the facts here. Those cases were all adjudications between a life tenant and the remaindermen, concerning royalties, which were paid upon the production of oil and other mines, which were opened by the life tenant, or by the life tenant and remaindermen jointly, or by a judgment of a court, directing the lands to be leased for oil production, after the creation of the life estate, and in those cases, it was held, that in as much as the life tenant had no right to open the new mines nor to the products of the mines when opened and the remaindermen had no right to the use of the land during the life tenancy, the life tenant was entitled to the interest on, or income, or use of the royalties during life, but, the corpus of the royalties, like the land, from which it came was the property of the remaindermen, and should be preserved for them. Lenfers v. Hinke, 73 Ill. 405; Wilson v. Youst, 43 W. Va. 826; Blakey v. Marshall, 174 Pa. St. 425; Eakin v. Hawkins, 52 W. Va. 124; Detfenbaugh v. Hess, 225 Pa. 638; Swague v. Lone Acre Oil Co., *supra;* Ex parte Winstead, 92 N. C. 703; McQueen v. Turner, 91 Ala. 272; Kelley v. Dugan, 111 Ala. 152; Stewart v. Tennat, 52 W. Va. 576. It is a well sttled rule, that a life tenant has no right to open new mines upon the land and is guilty of waste, in so doing. In such cases, the mode of enjoyment nor the source of profit having been fixed by the original owner of the land, before the creation of the life estate, the minerals in place reached by the opening of new mines, were land and subject to the ordinary principles governing their use, as between life tenant and remaindermen, and the royalties therein do not constitute profits of the lands as when they have been fixed as a source of profit by the fee simple owner before the creation of the life estate.

The judgment is therefore affirmed.