## Trimble et al. v. Kentucky River Coal Corporation et al.

(Decided May 30, 1930.)

(As Modified on Denial of Rehearing, October 17, 1930.)

302

J. W. CRAFT for appellants.

P. T. WHEELER for appelle Kentucky River Coal Corporation.

W. C. EVERSOLE for appellee Eversole.

JOHN P. CUSICK, Warning Order Attorney and J. E. JOHNSON, JR., for appellee Morrison.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The parties to this litigation are the owners of the coal, mineral, oil, and gasses, and certain mining privileges, in, under, and appurtenant to a tract of land, containing about 1,500 acres, situated in Perry county, which the court ordered sold for division. The Trimbles are dissatisfied with the judgment, and have appealed. Susan Eversole is also dissatisfied, and has prosecuted a cross-appeal.

On August 11, 1887, J. C. Eversole made a contract with four men by the name of Grigsby, by which he bought from them the coal, minerals, oils, and gasses underlying their property, together with certain mining rights and privileges. On January 31, 1888, J. C. Eversole contracted with John D. White and O. H. Harrison, and sold to them one-half of what he had purchased. On the 15th of April, 1888, J. C. Eversole was assassinated. He died intestate, and left surviving him his widow, Susan Eversole, and five children, to whom the interest of J. C. Eversole in these coal and mineral rights passed under our statutes of descent and distribution.

After the death of Eversole, White and Harrison completed the surveys of this property and settled with the Grigsbys, who then made a deed by which one-half of these coal and mineral rights was conveyed to White and Harrison and the other half was conveyed to the widow and heirs of J. C. Eversole. The deed contains this relative to the interest of the Eversoles:

*"The conveyance of the undivided half interest to them herein is meant to convey the title to them*

*in the same manner as they would hold the same now had it been conveyed to J. C. Eversole during his lifetime and he had died seized and possessed of same."*

The five children of J. C. Eversole have grown to maturity, and all of them have sold their interest in this property to the Trimbles. In the deed of Clara Belle Cornett, to the Trimbles, Susan Eversole joined as grantor. J. D. White is dead, and his heirs have sold his one-fourth interest in these coal and mineral rights to the Trimbles. O. H. Harrison and his wife have sold Harrison's one-fourth of these coal and mineral rights and by mesne conveyances that has passed to the Kentucky River Coal Corporation, and it has sold certain oil and gas privileges in this one-fourth to the appellee M. A. Morrison.

The Kentucky River Coal Corporation and M. A. Morrison are satisfied with the judgment, and have filed a joint brief giving reasons for sustaining it. The Trimbles are dissatisfied, and are urging two grounds for reversal of the judgment.

The first ground is that the court erred in ordering these coal and mineral rights sold for division. They insist that it should have been divided in kind, while the other parties to the litigation all contend that a division of this property in kind will result in material depreciation of it, both as a whole and as to each part.

The boundary of this property runs around a ridge. The ridge on the north of it is the watershed between Lott's creek and a stream known as Feltner fork; the ridge on the south of it is the watershed between Lott's creek and Second creek, while Lott's creek runs practically through the center of the property.

There are three seams of coal on this property that are referred to in the evidence. No. 7 seam is found near the top of these ridges, and there is a little over 300 acres of it very much disconnected and cut up. The No. 6 seam is more abundant, and it is supposed to underlie about 700 acres of this land, but it too is much broken and interrupted and quite irregular. Coal seam No. 4 occupies a great deal more of this property, but it is also cut in twain by Lott's creek, and is quite irregular, so that just on the evidence as to the coal seams alone it would appear quite speculative to attempt to divide this property in kind, and such a division would be almost certain to result in doing an injustice to one party or the other.

These seams are not of uniform thickness, and it would be quite a difficult matter to make an equitable division in kind.

Besides that difficulty, there is supposed to be oil and gasses and perhaps both under the property, and, as pointed out in Union Gas & Oil Co. v. Wiedeman Oil Co., 211 Ky. 361, 277 S. W. 323, it is practically imposs'bile to make an equitable division of property containing those two substances. Therefore we find the court did not err in ordering a sale of these coal and mineral rights for division.

The next complaint of the Trimbles is that the court erred in adjudging to Susan Eversole a dower interest in any part of this property, in directing that the value of her interest be determined according to Wigglesworth's table of mortality and paid to her in money, and in fixing 73 her age, the date the judgment was entered, as the age that should be used in making this estimate.

It is contended by the Trimbles that the court erred in holding Mrs. Eversole has dower in these mineral rights, so we must first dispose of that question. This record shows conclusively that these mineral rights are undeveloped, no mines have been opened thereon, nor has there been such at any time in the past; these minerals are not now under lease nor have they ever been; they are simply lying there just as they lay on August 11, 1887, or, for that matter, just as they have lain for thousands of years.

Thus we have before us a question with which the courts of America have wrestled for the last hundred years; that is, what happens when the owner of real estate sells the oil, gas, coal, or other mineral rights thereon. Some courts hold the purchaser gets a mere right to go upon the property in question and by suitable operations to take the designated substances therefrom.

Such a right is known as a profit a prendre. See 19 C. J. p. 870, sec. 10. Examples of such rights are: To cut and take timber, Baker v. Kenney, 145 Iowa, 638, 124 N. W. 901, 139 Am. St. Rep. 456. To take sand, Hopper et al. v. Herring et al., 75 N. J. Law, 212, 67 A. 714. To take ice, Huntington v. Asher, 96 N. Y. 604, 48 Am. Rep. 652. To take iron ore, Eckert v. Peters, 55 N. J. Eq. 379, 36 A. 491. To take seaweed, Hill v. Lord, 48 Me. 83. To take driftwood, Yuba Consolidated Gold-fields v. Hilton, 16 Cal. App. 228, 116 P. 712, 715. To dig coal, Huff v. McCauley, 53 Pa. 206, 91 Am. Dec. 203. To

shoot and take game, Bingham c. Salene, 3 Am. St. Rep. 152, 15 Or. 208, 14 P. 523. To cut grass, Pierce v. Keator, 70 N. Y. 419, 26 Am. Rep. 612. To fish, Tinicum Fishing Co. v. Carter, 61 Pa. 21, 100 Am. Dec. 597. To take apples from an orchard, Taylor v. Millard, 118 N. Y. 244, 23 N. E. 376, 6 L. R. A. 667. An oil lease, Phillips v. Springfield Crude Oil Co., 92 P. 1119, 76 Kan. 783. To take waste or rubbish stone, Matthers Slate Co. v. Advance Industrial Co., 185 App. Div. 74, 172 N. Y. S. 830

This view is known as the "Incorporeal Rule."

Other courts adopt the view that the purchaser of oil, gas, coal, or other mineral rights by his purchase acquires not only a right to go upon the property and take the designated substances, but gets by his purchase the ownership of the substances themselves as they lie in place on, in, or beneath the property.

This is known as the "Corporeal Rule." This state adopts the latter view. See Wakenva Coal Co. v. Johnson, 234 Ky. 558, 28 S. W. (2d) 737; Byassee v. Reese, 4 Metc. 372, 83 Am. Dec. 481; and Wiggins v. Jackson. 73 S. W. 779, 24 Ky. Law Rep. 2189; Second Nat. Bank v. Rouse, 142 Ky. 612, 134 S. W. 1121; Beckett-Iseman, etc., Oil Co. v. Backer, 165 Ky. 818, 178 S. W. 1084; Scott v. Laws, 185 Ky. 440, 215 S. W. 81, 13 A. L. R. 369; Kash v. United, etc., Oil Co., 192 Ky. 422, 233 S. W. 898; Wolfe County v. Beckett, 127 Ky. 253, 105 S. W. 477, 32 Ky. Law Rep. 167, 17 L. R. A. (N. S.) 688; Stuart v. Com., 94 Ky. 595, 23 S. W. 367, 15 Ky. Law Rep. 513; Crain v. West, 191 Ky. 1, 229 S. W. 51; Eager v. Pollard, 194 Ky. 276, 239 S. W. 39, 43 A. L. R. 808; Kennedy v. Hicks. 180 Ky. 563, 203 S. W. 318; Adams v. Elkhorn Coal Corp., 199 Ky. 612, 251 S. W. 654; Hoskins v. Northern Lee O. & G. Co., 194 Ky. 628, 240 S. W. 377; Arnett v. Elkhorn Coal Corp., 191 Ky. 706, 231 S. W. 219; Gray-Mellon Oil Co. v. Fairchild, 219 Ky. 143, 292 S. W. 743. According to the view this state adopts, these oil, gas, coal, and mineral rights are real estate owned in fee simple.

Thus when J. C. Eversole died April 15, 1887, his wife was at once invested with dower in this property. See Gen. Stats. 1883, p. 527, c. 52, art. 4, sec. 2. The Trimbles contend her claim of dower, if she ever had any, has been barred by lapse of time. In support of this contention they cite Kinsolving v. Pierce, 57 Ky. (18 B. Mon.) 782; Anderson v. Sterritt, 79 Ky. 499; Winchester v. Keith, 70 S. W. 664, 24 Ky. Law Rep. 1033; and Wil-

liams v. Williams, 89 Ky. 381, 12 S. W. 760, 11 Ky. Law
Rep. 608, 6 L. R. A. 637. To these we will add the case
of Ralls v. Hughes and Hedges, 31 Ky. (1 Dana) 407.
In all of these cases except the Williams case, the prop-
erty had been held adversely to the widows for more than
the statutory period after the death of the husbands
before the assertion of dower by the widows, and it was
held in each case the cause of action accrued upon the
death of the husband and that the dower claims asserted
by these widows were barred by limitations.

In the Williams case these were the facts: Felix
Williams married Elizabeth B. Williams in 1839. Felix
had inherited an interest in a tract of land from his
father, Pope Williams, who died intestate in 1834. This
land was partitioned in 1842 or 1843. It was claimed
Felix, without his wife joining in the deed, sold his inter-
est in 1843 or 1844. If there was such a deed, it was
never found. Felix died July 27, 1883, and in 1886 his
widow, Elizabeth B. Williams, asserted her dower. E.
P. Williams and those claiming under him plead their
43 years of adverse possession in bar of her claim. The
court held that her husband would have been barred by
the statute had he attempted to recover this land, but
that her cause of action, having been asserted within
three years after it accrued, was not. We have no
case of adverse possession here. Susan Eversole was
just as much in possession of this property as the Trim-
bles were, and this being a vested estate in her, it cannot
be lost by anything short of an adverse possession for
the statutory period. Next the Trimbles advance the
claim that Susan Eversole, if she ever had a right of
dower in this property, has been guilty of such laches
that she should not be allowed to assert it now, 43 years
after her husband's death. Let us remember, however,
her dower right here was a vested estate, to which the
doctrine of laches has little, if any, application. See 21
C. J. p. 215, sec. 213. Laches is not simply delay, it is
delay that works an injury. 21 C. J. p. 210, sec. 211.

Ross v. Clore, 33 Ky. (3 Dana) 189, cited by the
Trimbles, is not authority to the contrary. What the
court decided there is that if the wives of Morgan and
Fishback were entitled to dower and should claim it, it
could be laid off in the remaining property. The court
said the lapse of 35 years raised a presumption they were
not living. The court never suggested it would bar their
claims. The Trimbles knew she was living and had a

claim of dower against the property, and when they bought one interest the precaution was taken to have her join in the conveyance.

The Trimbles are certainly no worse off by her assertion of dower now than they would have been had she asserted it sooner, in fact they are better off; her right has not so long to run. We will now discuss the authorities relied on by the Trimbles by which they hope to convince us the widow of J. C. Eversole has no dower in this property.

They cite the case of Kentucky River C. Coal Co. v. Frazier, 161 Ky. 374, 170 S. W. 986, and call attention to this statement which is found in that opinion: "*There is no dower in unopened mines.*" That statement is in that opinion, it appears to have been slipped in as a sage observation, but such a question was not before the court in that case, as will be manifested by this, which is taken from the latter part of that opinion:

"The widow was not a plaintiff; she was not a party to the action. On this state of the record, we do not mean to say what, if any, interest the widow has in the estate. If she had or has a dower in the property, it is not affected by the judgment."

After that in the case of Daniels v. Charles, 172 Ky. 238, 189 S. W. 192, 194, we again observed: "But there is no dower in unopened mines." The real question decided in that case was that Mrs. Daniels (the widow) had no right to open a mine, as will fully appear from these excerpts from that opinion:

"The question for decision, therefore, is this: Was the contract of May 28, 1898, a valid and enforceable contract at the time Mrs. Daniels made the lease of March 17, 1906, nearly eight years later? If the contract was enforceable, the case comes within the exception to the general rule last above pointed out, and the widow was entitled to the royalties upon coal mined from the dower tract. But, since the contract of May 28, 1898, expired by its own terms in twelve months from its date, the subsequent lease executed by Mrs. Daniels on March 17, 1906, nearly eight years later, in her individual capacity as owner and as guardian of her children, was wholly unauthorized. . . . It follows, therefore, that the judgment of the chancellor was wrong

in allowing appellant any portion of the royalties received from the dower tract.''

We feel bound by what we say in our opinions, not because we said it, but because we had to say it in reaching the conclusion to which we came. Things said otherwise may be very wise, but we are only bound by them when we have to say them in reaching our conclusion. In other words, we are bound by our decisions not by our remarks.

Whittaker v. Lindley, 3 S. W. 9, 10, 8 Ky. Law Rep. 690, contains this which needs no further comment:

"While the widow may not be entitled to dower in mines that have not been opened,—a question we do not decide,—it is well settled that, as to mines, that have been opened, she is entitled to dower.''

We have other cases that have some bearing on this question, but none expressly deciding it. We refer to the cases of Williamson v. Williamson, 223 Ky. 589, 4 S. W. (2d) 392; Union Gas & Oil Co. v. Wiedeman Oil Co., 211 Ky. 361, 277 S. W. 323; Lemaster v. Hudson, 214 Ky. 467, 283 S. W. 439; Meredith v. Meredith, 193 Ky. 192, 235 S. W. 757; Id., 204 Ky. 608, 264 S. W. 1109; Collins v. Lemaster, 232 Ky. 188, 22 S. W. (2d) 567; Eager's Guardian v. Pollard, 194 Ky. 276, 239 S. W. 39, 43 A. L. R. 808; Caudill v. Wagoner, 184 Ky. 381, 212 S. W. 422; Salyer's Guardian v. Keeton, 214 Ky. 643, 283 S. W. 1015; Gerkins v. Ky. Salt Co., 100 Ky. 734, 39 S. W. 444, 19 Ky. Law Rep. 130, 66 Am. St. Rep. 370; Daniels v. Charles, 154 Ky. 232, 157 S. W. 32; Id., 172 Ky. 238, 189 S. W. 192, Saulsberry v. Saulsberry, 162 Ky. 486, 172 S. W. 932, Ann. Cas 1916E, 1223; Crain v. West, 191 Ky. 1, 229 S. W. 51; Goosling v. Pinson, 198 Ky. 57, 248 S. W. 248. None of these, however, decide the present question, which is: Has a widow dower in unopened mines? We have already seen that rights such as these are real estate. Mrs. Eversole is entitled to dower in her husband's real estate, so why is she not entitled to dower in his unopened mines? There is no reason why she is not, and for the reason hereinafter given we now hold she is. This is a right that is usually not valuable to her, because she cannot open and work unopened mines, as that would depreciate the value of the estate of the remainderman, still she is entitled to

dower in them though she cannot work them. In Lemaster v. Hudson, 214 Ky. 467, 283 S. W. 439, 440, we said:

> "As no dower has been assigned to the widow in this case, she is entitled to have assigned her as dower one-third of the value of this land, not one-third of its extent. That value is to be determined, not by the use of the surface, but by every use for which the land is adapted, whether it be for cultivation, for mining, or the value of the landscape for its beauty."

Mrs. Eversole could not open a mine on this property; that would be waste of which the Trimbles could and would promptly complain, but neither could they. Neither is now proposing to open a mine, but the property is to be sold and each wants everything that can possibly be got out of it. The Supreme Court of Pennsylvania had this identical question before it in Deffenbaugh v. Hess, 225 Pa. 638, 74 A. 608, 609, 36 L. R. A. (N. S.) 1099. The only difference is that Deffenbaugh was asserting a claim for curtesy, whereas Mrs. Eversole is asserting a claim for dower. The coal rights involved in the Deffenbaugh case were sold by agreement with the understanding the court should determine whether Deffenbaugh was entitled to curtesy therein and what interest he had in the $42,705 for which it was sold. By an entirely separate sale and agreement the surface of the land that had belonged to Mrs. Deffenbaugh had been sold; there was nothing left of her estate but the coal rights which had been excepted from the sale when the surface was sold. Because of the similarity, we might say the identity, of the question, we shall quote the language of the opinion of the Deffenbaugh case.

> "What remained of value was nothing but the vein of coal. This, at the time of his wife's death, was unopened, unmined, and undeveloped, and remained so at the time of the sale to Cray. That the appellee had no right to open and mine it is conceded; but such concession is not an admission that he did not have a life estate in it, even though it was, and continued to be, valueless to him until opened or sold by the owner of the fee with his consent, coupled with a reservation of his rights. It constituted a part of the land of which his wife had died seized, for coal in place is land, and his com-

mon-law right was therefore a life estate in it. To every part of the land of which she was seized, whether above or beneath the surface, and over which her dominion extended, he became entitled for life upon her death, and during his life there was no right in the remainderman to enjoy any portion of it without his consent, even if he himself could derive no benefit from it. Tenancy by the courtesy means nothing less. The remainderman was excluded from every portion of the land during the life tenancy. When, however, what had not been productive or profitable to either the life tenant or the remainderman became so by an act of the latter, permitted by the former, the right of each continued to be the same in the portion of the land made productive and profitable. When the vein was sold, the purchase money took its place as land, and the interest of the life tenant followed it in its changed form, from which, without committing waste, he could derive enjoyment. Such enjoyment will not impair the vested right of the remainderman, and upon the death of the life tenant the money will pass undiminished to the former, just as the land, if not sold, would have passed uninjured by waste.''

In Lenfers v. Henke, 73 Ill. 405, 24 Am. Rep. 263, it was held a widow is entitled to dower in mines unopened at the death of her husband but thereafter opened by the remainderman. This opinion was followed and approved in Priddy v. Griffith, 150 Ill. 560, 37 N. E. 999, 41 Am. St. Rep. 397. In Seager v. McCabe, 92 Mich. 186, 52 N. W. 299, 16 L. R. A. 247, it was held a widow was entitled to dower in royalties realized from a mineral lease made by the guardian of her children. In Dickens v. Hamer, 1 Dres and S. 284, 29 L. J. Ch. N. S. 778, 2 L. T. N. S. 276, the opinion is expressed that a widow is dowable under facts similar to the Seager case.

In Blakley v. Marshall, 174 Pa. 425, 34 A. 564, 565 an oil lease had been made by the life tenants and remaindermen joining therein. In the resulting litigation over the proceeds, the court said:

"An oil lease investing the lessee with the right to remove all the oil in place in the premises, in consideration of his giving the lessors a certain per centum thereof, is, in legal effect, a sale of a portion

of the land, and the proceeds represent the respective interests of the lessors in the premises. If they be life tenants and remaindermen, the former are entitled to the enjoyment of the fund (i. e. interest thereon) during life, and at the death of the survivor the corpus of the fund should go to the remaindermen. This is as nearly a just and equitable distribution as can be made.''

In Reynolds v. Whitescarver, 66 W. Va. 388, 66 S. E. 518, 519, it was held although a widow could not open and work an unopened mine, yet if the property is sold she has dower in the proceeds. This is taken from that opinion:

"It is argued that, because the wife can receive no benefit from dower assigned to her in an unopened seam of coal, she is not dowable in it; and that, not being dowable in such coal in kind, she is not dowable in the proceeds derived from the sale of it. But her right to dower is not made to depend upon the use she may be permitted to make of the real estate. It depends only on the fact that it is 'real estate,' and, even though she may not be able to make any beneficial use of it whatever, and even though the taxes may be a burden to her, still she is entitled to dower, and, being entitled to dower in the unopened seam of coal, simply because it is real estate, she is entitled to dower in the surplus proceeds derived from its sale.''

In Manufacturers' Light & Heat Co. v. Knapp, 102 W. Va. 308, 135 S. E. 1, it was held a widow was entitled to dower in the royalty arising from operations conducted under an oil and gas lease. For other authorities, see 19 C. J. p. 469, sec. 39; 9 R. C. L., p. 579, sec. 22.

In Scribner on the Law of Dower (2d Ed.) p. 206, the writer says the reports are barren of adjudged cases upon this subject, but after that admission adds there is no dower in unopened mines. We cite this from his text:

"The distinction taken between mines which have been opened and those which have not, appears to rest upon the theory that it is an act of waste for a doweress, or any other tenant for life, to open mines, and therefore it is not permissible for her to do so. Bracton states it as one of the principles

regulating the right of dower, that a widow cannot claim a thing in dower unless she may use and enjoy it sine vasto exilio et distructione. But Mr. Burton gives entirely a different reason for this rule. An interest in unopened mines on the lands of another, unaccompanied by any estate in the surface of the land, and where no possession has been taken, he likens to an estate in remainder, and supposes that no right of dower attaches upon such interest, upon the same principle that it is excluded from estates in remainder.''

A careful examination of what was said by Bracton and by Burton shows these men were unable to advance any reason a widow should be denied dower in unopened mines except because she could not work them. In other words, they do not say she is not entitled to dower, but because they could think of no means by which it could be of benefit to her, they solved their problem by simply denying her claim. By this sale these mineral rights will be converted into money and Mrs. Eversole's claim on the use of the money will work no waste and the court did not err in adjudging it to her.

No further words of ours could add to what has been quoted from the foregoing authorities. No good reason can be assigned why Mrs. Eversole should not have dower in these mineral rights. In states adopting the incorporeal rule, a different conclusion might logically be reached, for by such a rule the grantee of mineral rights gets, not the ownership of the substances granted, but a bare right, by suitable operations, to take them, an incorporeal hereditament, but in this state a widow is entitled to dower in an incorporeal hereditament. See Stevens v. Stevens, 33 Ky. (3 Dana) 371, where we so held and in that opinion said:

> ''Her right, and her only right, is to one-third of each; and her right in the ferry is one-third, not of the ferry, but of its profits, or of its use; because a ferry being an incorporeal hereditament, is indivisible.''

The Trimbles contend the court erred, however, because by the sale of this property the widow gets a portion of the proceeds, whereas if the property had been divided in kind, she could not open a mine or otherwise derive a profit therefrom, and that her rights should be

no greater under a sale for partition than under a partition in kind. The answer to that is that neither should the rights of the Trimbles be any greater. If the property is sold, they get the proceeds now subject to Mrs. Eversole's dower in four-tenths thereof, and if it is divided in kind they would get their part subject to Mrs. Eversole's dower just the same, and would not be able to operate or sell their part without her consent. The courts are only interested in awarding to litigants those things that are theirs under the law. These things may be of no profit to them whatever, still the courts will uphold their rights to them when asserted. For example, in Brackett v. Persons Unknown, 53 Me. 238, 87 Am. Dec. 548, the court awarded to a widow dower in flats covered by tidewater and of doubtful if any value.

Mrs. Eversole has asserted her dower here, the record shows she is entitled thereto, and the court did not err in awarding it to her.

Upon her cross-appeal, Susan Eversole is insisting that, of the $1,670.37 paid the Grigsbys for this property, that J. C. Eversale paid $518.61, that she paid $730.64, and White and Harrison paid $421.12, that this $421.12 was money that White and Harrison owed to the estate of J. C. Eversole, and that she was entitled to one-third of that under the statute then, and, adding this one-third, or $140.37, to the $730.64 which she paid herself, makes a total of $871.01, and that there should be allotted to her in fee that part of the Eeversole one-half of this property which bears the same relation to the whole of it that this $871.01 bears to $1,670.37; and she contends that the deed by which the Grigsbys conveyed this property should be thus reformed, and complains of that part which we have quoted and italicized above, but section 2353 of our Statutes is against her.

Mrs. Eversole cites the case of Combs v. Combs, 99 S. W. 919, 30 Ky. Law. Rep. 873, as support for her contention. We think it well to copy the Statute governing the subject. It is this:

"Sec. 2353. When a deed shall be made to one person, and the consideration shall be paid by another, no use or trust shall result in favor of the latter, but this shall not extend to any case in which the grantee shall have taken a deed in his own name without the consent of the person paying the consideration, or where the grantee, in violation of some

trust, shall have purchased the lands deeded with the effects of another person.''

To succeed Mrs. Eversole must bring herself within one of the two exceptions to the operation of the statute which are contained in the latter part of it. Serious difficulties confront her at the very outset. First she is in no position to attack this deed when this action, which was begun by her, is founded upon it. If by some means, however, she could surmount that obstacle, then this one confronts her. This deed has been of record since December 30, 1889; her adversaries have acquired their rights upon the faith of its correctness and in reliance upon it.

As she has nowhere pleaded they took their interests with notice of the trust she now seeks to establish, they must be held to be innocent purchasers, purchasing in reliance upon the verity of the records, and she must lose. See Straeffer v. Rodman, 146 Ky. 1, 141 S. W. 742, Ann. Cas. 1913C, 549.

The deed from the Grigsbys was properly drawn, and Mrs. Eversole will have to be content with her dower. Originally she had dower in one-half of this property, but she joined in a conveyance made by her daughter, Clara Belle Cornett, to the Trimbles, and thereby waived her dower as to one-fifth of one-half, or one-tenth, of this property, thus reducing her dower that much.

Her next contention is that the court should have fixed her age for the division of this property, not at 73, her age when the judgment was rendered, but at 33, her age when her husband was killed, but this position is untenable, though the age fixed by the court was erroneous. Her rights are to be determined by her age at the time that the sale of this property is made. See 47 C. J. p. 584, sec. 851. This slight error does not require a reversal of the judgment.

The court will have its order for the sale of the property carried out, and, after it is sold, the court will then ascertain the age of Mrs. Eversole at the date of the sale of the property and will then estimate the value of her dower in four-tenths of the purchase price and let that be paid to her in money, or the court may direct one-third of four-tenths of this money to be loaned out so long as she lives and that there be paid to her the income therefrom less the taxes thereon.

To state this concretely, we will just arbitrarily assume that after this sale is made and the costs have

been paid there remains for division $12,000. The court will direct $3,000 to be paid to the Kentucky River Coal Corporation and M. A. Morrison as their one-fourth of the property. The court will direct $1,600 loaned out during Mrs. Eversole's life-time and the income therefrom paid to her, that being her one-third of four-tenths of this property. The remaining $7,400 will be ordered paid to the Trimbles, and at the death of Susan Eversole they will get this $1,600, which with the $7,400 they get now, will make a total of $9,000 they will get; or if the parties so agree or the court thinks best, the value of the life estate of Mrs. Eversole in this $1,600, which is the same as her dower right in $4,800, may be ascertained by Wigglesworth's tables and paid to her in cash.

Finding no prejudicial error in the record, the judgment is affirmed.