John SMITH, A Single Person, Ray Keown, and Claudine Keown, Movants,

v.

Gregory P. ROGERS, Petroleum and Exploration, Inc., Respondents.

Supreme Court of Kentucky.

Jan. 16, 1986.

Robert D. Simmons, Bowling Green, for movants.

Ray B. White, Bowling Green, Patrick A. Ross, Horse Cave, for respondents.

STEPHENSON, Justice.

In this appeal we consider a decision of the Court of Appeals which reversed the judgment of the trial court. The subject of the decision is a controversy over a voluntary pooling provision in an oil and gas lease. We granted discretionary review and, after hearing oral argument and considering the case, affirm the decision of the Court of Appeals and adopt the opinion of Judge Dunn, which is as follows:

"In a declaratory judgment action brought by the appellees, the Warren Circuit Court without jury adjudged that oil leases from the appellee, John Smith, now a single person, and his wife, and from the appellees, Ray and Claudine Keown, to Louisiana Crude Oil and Gas Co., Inc., assignor of the appellant, Gregory P. Rogers Petroleum and Exploration, Inc., also called ROGPEX, had expired and were of no further force and effect. The cardinal issue relates to the validity of and compliance with the 'pooling' clause 13 contained in the leases prepared on the 'standard 88' oil and gas lease form. We reverse.

"Clause 13 is as follows:

Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this Lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in Lessee's judgment, it is necessary or advisable to do so in order to properly develop and operate said leased premises *so as to promote the conservation* of oil and gas or other minerals in and under and that may be produced from said premises, such pooling to be of tracts contiguous to one another and to be into a unit or units not exceeding 80 acres each in the event of an oil well or into a unit or units not exceeding 640 acres each in the event of a gas well. *The Lessee shall execute in writing and record in the conveyance records of the County in which the land herein leased is situated an instrument identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated, for all purposes except the payment of royalties on production from the pooled unit, as if it were included in this Lease.* If production is found on the pooled acreage, it shall be treated as if production is had from this Lease, whether the well or wells be located on the premises covered by this Lease or not. In lieu of the royalties elsewhere herein specified, Lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein on an acreage basis, bears to the total acreage so pooled in the particular unit involved. (Emphasis added.)

"The term of the leases was provided for in clause 5 as follows:

5. If no well be commenced on said premises on or before the 14th day of Feb., 1974 this lease shall terminate as to both parties, unless the Lessee on or before the said date shall pay or tender, in the manner hereinafter provided, a rental of one dollar $1.00 per acre per annum, payable quarterly in advance, which payments shall confer the privilege of successively deferring the commencement of a well for the periods for which such rental shall be paid....

"The Smiths and the Keowns entered these separate oil and gas leases with Louisiana Crude on February 14, 1973. The terms of the leases were identical. Others in the same neighborhood entered into identical leases on various dates about that same time. As quoted above, the primary term for the commencement of a well under the leases was 10 years, the last 9 of which were prolongations by payment of delayed rentals after failure to commence a well in the first year. Louisiana Crude on January 4, 1983, assigned the leases to ROGPEX, who in turn assigned an interest in them to Allied Coal, Oil and Gas Corporation on February 8, 1983, six days prior to the expiration date of the primary term.

"On February 11, 1983, ROGPEX filed in the Warren County Clerk's office a notice of pooling affecting the Smiths' and the Keowns' land along with that of B.B. Young under which ROGPEX undertook to pool or unitize 66 acres for purposes of an oil well. On February 14, 1983 it filed a similar notice for purposes of a gas well affecting the Smiths,' Keowns' and B.B. Young's land. The land of other lessors with leases identical to those in question was also affected by both notices.

"A well was commenced by ROGPEX and Allied on B.B. Young's land on Febru-

ary 12, 1983, pursuant to verbal permission to commence drilling given on February 11, 1983, by Robert C. Price of the Commonwealth's Department of Mines and Minerals. His duties included issuance of drilling permits.

"The Keowns and John Smith filed a complaint for declaratory judgment against ROGPEX on April 3, 1983, seeking to have their leases to be declared null and void and expired, to have the notice of pooling of February 14, 1983, to be declared a nullity, to have the right to lease the minerals under their property to be declared theirs, and further seeking that ROGPEX be restrained from entering upon their property for any purpose whatsoever.

"The case was advanced on the docket and an evidentiary hearing without jury was had on July 25, 1983. In a scholarly opinion the trial judge entered the trial court's findings of fact, conclusions of law and judgment on August 4, 1983.

"In declaring in its judgment that the leases had expired by their terms and are of no further force and effect, the trial court relied on several conclusions: 1) the pooling was solely for the purpose of preventing the expiration of the leases by commencing a well on one tract of land, since there was no geological data offered to support a purpose of conservation; 2) KRS 353.570(3) is unconstitutional and, therefore, invalid because it is impermissibly vague and uncertain, thus rendering the oral permission by the Department of Mines and Minerals invalid and nullifying the commencing of the well during the primary lease term; and, 3) if that statutory provision is not unconstitutional, the oral permission to commence drilling and thus commence the well was impermissibly arbitrary and not in keeping with the public policy of conservation promulgated in KRS 353.500 since the official granting the permission had no survey, geological data, information regarding boundaries, distance from property lines, and spacing requirements to rely on in granting it.

"In so declaring it also rejected ROGPEX's contention that the 'pooling' paragraph of the lease gave it authority without notice, other than that filed with the county clerk and without appearing before the gas and oil commission, to form a 'pool' without state intervention as provided in KRS 353.500 et seq. in that those sections, particularly KRS 353.630, had no bearing on the matter.

■ "In this latter regard we agree with the trial court that the public policy of the Commonwealth as promulgated in KRS Chapter 353, our Oil and Gas Conservation Act, is one of conservation, and we also agree that this public policy is applicable to voluntary, private pooling agreements such as we have in the leases in question. We disagree, however, that before such voluntary, private pooling can be brought into practical reality the provisions of KRS 353.630 and KRS 353.640 are to be complied with, the principal ones being that pooling must be approved on an application to the oil and gas conservation commission, and proper notice be given to interested surface owners and a hearing held. These provisions are for involuntary pooling. This type statute, where compulsory pooling procedures can be initiated only upon the application of a mineral interest owner, has been described as 'an Act to encourage voluntary pooling' not as an act to provide compulsory state action. 38 Am Jur 2d *Gas and Oil* § 164 (1968); KRS 353.630(2)(b). There would be no point or advantage to voluntary pooling that it is supposed to encourage, if the same cumbersome procedures attendant to involuntary pooling had to be met. We hold that these provisions do not apply to voluntary pooling where, as provided in these leases, it can only be done in furtherance of conservation. The trial court's reliance on the case of *Phillips Petroleum Company v. Peterson*, 218 F.2d 926 (10th Cir.1954), is misplaced. In that case the leases themselves provided that approval by governmental authority was necessary to commence pooling, and the trial court erred in requiring such approval here where the leases contained no such provision.

■ "Its reliance on *Sotrana-Texas Corp. v. Mogen,* 551 F.Supp. 433 (D.N.D. 1983), for the proposition that a judgment for the advisability or necessity of pooling must be grounded on the basis of geological data, is also misplaced and in error. In that case this basic requirement was that of the governmental authority involved by virtue of a lease provision mandating governmental approval, and was not otherwise a requirement without which a conservation purpose could not be found. Our law does not provide that geological data is the sine qua non of establishing a conservation purpose. It does not follow that absent geological data to indicate the existence of a pool of either oil or gas, the only purpose for pooling here was for the purpose of preventing expiration of the leases by starting to drill on one tract.

■ "The trial court also erred when it held that the permit issued to commence drilling was ineffective because KRS 353.-570(3) is unconstitutional because it is impermissibly vague and uncertain, and not subject to an objective interpretation. First, it is not vague or uncertain. It simply provides that 'the department may authorize the commencement of the drilling ... of any well prior to the issuance of a permit therefor....' Obviously, if for some reason a permit is not issued thereafter pursuant to paragraphs (1) and (2) of the statute, the authority can be withdrawn. Second, since the attorney general was not notified of this statutory constitutional attack, it can't be raised. CR 24.03.

■ "Finally, we disagree with the trial court in holding that the authorization to commence drilling pursuant to the provisions of KRS 353.570(3) was otherwise invalid for the reason it was arbitrarily granted. We have already considered the question of lack of geological data as not being conclusive as to lack of a conservation purpose. We are not persuaded by the record that the authorization to commence drilling was either arbitrary or contravened either the statutory or lease requirement of conservation."

The decision of the Court of Appeals is affirmed.

AKER, GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents and files a separate dissenting opinion in which LEIBSON, J., joins.

STEPHENS, Chief Justice, dissenting.

I respectfully dissent. The trial court made a factual determination that the pooling arrangement was begun solely to prevent ROGPEX's leases from expiring. The lease agreements provided for pooling only for the purpose of promoting the conservation of oil and gas or other minerals. Thus, the trial court's finding that ROGPEX was using the pooling option for an invalid purpose, i.e., to extend all the leases, should be upheld.

The pooling was begun a mere three days prior to the leases' date of expiration. Roger's, the holder of the leases, testified that the purpose of the pooling was to be able to continually go back and drill. He failed to mention conservation.

Because this is an issue of fact, and not of law, the trial court's findings should be dispositive.

LEIBSON, J., joins in this dissent.