RICE BROTHERS MINERAL
CORPORATION, Appellant,

v.

Scott TALBOTT, Jr., Appellee.

Court of Appeals of Kentucky.

Oct. 10, 1986.

**516**

Eugene C. Rice, Paintsville, for appellant.

John S. Talbott, Scott S. Talbott, London, for appellee.

Before CLAYTON, DUNN and GUDGEL, JJ.

GUDGEL, Judge:

This is an appeal from a summary judgment entered by the Leslie Circuit Court in an action involving an alleged failure to pay the amount due the holder of an oil and gas royalty. Appellant, the holder of a one-eighth overriding royalty interest, contends that appellee, as the owner of the working interest in the producing well, did not have authority to enter, over its objection, a voluntary pooling agreement respecting that well or to decrease the amount of its overriding royalty payments from 12.5% to 7.5% of production. We disagree. Hence, we affirm.

On July 25, 1978, Ross and Ruth Baker, as owners, executed a printed "Producers 88 Rev." oil and gas lease. By mutual consent, the parties to the lease deleted a clause which expressly authorized the lessee to pool the leased property. Thereafter appellant, as lessee, made an absolute assignment of the lease to appellee. As the sole consideration for the assignment, appellant reserved a one-eighth overriding royalty interest. The assignment, like the printed lease, was silent as to the right to pool the leased property.

Appellee then drilled a producing well on the leased property. Thereafter, appellee located another spot on the leasehold at which he wished to drill a second well. That location was sufficiently close to the property of adjacent landowners that a well could be drilled in accordance with the applicable statutes only if appellee pooled the leased property with the property of the adjacent landowners. Appellee, therefore, entered a voluntary communitization or pooling agreement with the Bakers and the owners of the adjacent property. Appellant, however, refused to enter such an agreement. Despite appellant's express objection and lack of consent, appellee drilled a pooled well on the Baker leasehold. Since the Baker property comprised only 60% of the entire area pooled, appellee paid appellant an overriding royalty of 60% of one-eighth, or 7.5%, of the entire production of the pool. This action, by which appellant sought to recover one-eighth or 12.5% of the entire production of the pool, followed. In due course, the court granted appellee a summary judgment. Hence, this appeal.

Appellant argues that the payments for its one-eighth overriding royalty interest should equal one-eighth of the production from the entire pool since it did not consent to the voluntary pooling agreements secured by appellee. We disagree.

Solid minerals in place are attached to the land itself, but title to, or interest in, those minerals may be severed from the land. Hence, the purchaser of a severed mineral estate acquires both ownership of the solid minerals in place and a right to go upon the surface owner's property in order to take the designated minerals. *Trimble v. Kentucky River Coal Corporation*, 235 Ky. 301, 31 S.W.2d 367 (1930).

Title to oil and gas in place, by contrast, is a qualified title. Because oil and gas are fugitive in nature, they are not owned in the same sense that the surface or solid minerals beneath the surface are owned. Rather, ownership is limited to possessing an exclusive legal right to explore and, if oil or gas is found, to reduce that substance to possession and ownership. *Central Kentucky Natural Gas Co. v. Smallwood*, Ky., 252 S.W.2d 866 (1952); *Sellars v. Ohio Valley Trust Co.*, Ky., 248

S.W.2d 897 (1952). It follows, therefore, that the lessee under an oil and gas lease acquires no title to any oil and gas in place, but rather, acquires only a right to explore for oil and gas and to take title to oil and gas which are found and removed from the ground. *Williams' Adm'r v. Union Bank and Trust Co.*, 283 Ky. 644, 143 S.W.2d 297 (1940); *Swiss Oil Corporation v. Hupp*, 253 Ky. 552, 69 S.W.2d 1037 (1934). Further, absent an express lease prohibition against assignment, the lessee under an oil and gas lease may assign any rights possessed by virtue of that lease to a third party, who acquires all of the assignor's rights under the portion of the lease so conveyed. *Cf. Coleman v. Owens*, Ky., 254 S.W.2d 341 (1953). Thus, a lessee who has assigned all lease rights and retains only an overriding royalty interest possesses no ownership interest in any oil and gas in place. Instead, that party reserves only a right to receive a certain percentage or proportion of any oil or gas produced. *See Hall v. Fuller*, Ky., 352 S.W.2d 559 (1961); 58 C.J.S. *Mines and Minerals* §§ 3, 185 (1948).

Oil and gas are often found in underground pools located so as to lie beneath surface property owned by several different persons. For conservation purposes connected with this phenomenon, various statutes and regulations have been enacted to govern the production of oil and gas from such pools. *See* KRS Chapter 353. The Department of Mines and Minerals is specifically authorized, after notice to "all persons owning an oil or gas interest" and a hearing, to order that several tracts be combined or "pooled" for drilling purposes. KRS 353.630, 353.640. Alternatively, however, the "owners of all oil and gas interests" in a given pool may privately give their written consent to pooling in furtherance of conservation, thereby bypassing the department's notice and hearing process. *Smith v. Rogers*, Ky., 702 S.W.2d 425 (1986); KRS 353.620.

Here, appellant assigned its rights as lessee under the Baker lease to appellee. Although appellant retained a one-eighth overriding royalty interest in the Baker lease as consideration for the assignment, it retained no ownership interest in any oil or gas which is in place on the leasehold. Appellant's consent to the disputed voluntary pooling agreement, therefore, was not required by KRS 353.620, as it was not an "owner" of any "oil and gas interest" within the statutory meaning of those terms. Moreover, contrary to appellant's contention, the deletion from the original form lease of the provision authorizing pooling did not have the effect of forever prohibiting pooling.

We also conclude that the court did not err by determining that no genuine issue of material fact exists as to the amount of the royalty due appellant. Clearly, the proceeds from an oil pool in Kentucky must be apportioned according to each person's contributions to the total production from the pool. *See* KRS 353.-510(11), 353.630(4), 353.640(2), 353.651(2)(b). Despite appellant's argument to the contrary, there is no dispute that the Baker property comprises only 60% of the pool. It follows, therefore, that only 60% of the production from the pooled well may be apportioned to the Baker lease. Thus, even though the pooled well was actually drilled on the Baker lease, appellant is only entitled to 60% of a one-eighth overriding royalty interest, or 7.5% of the production of the entire well. It is undisputed appellant has been receiving a royalty of this amount.

The court's judgment is affirmed.

All concur.